## CHRISTOPHER GOODHAND *vs.* VINCENT BENTON, JR.— *E. S., June,* 1834.

A witness who has given testimony of the occurrence of any event, *at a particular period,* the time of which is material, can strengthen his evidence by proving that it happened at the same time with, or before, or after, a particular epoch or transaction, the date of which can be proved with greater certainty.

Evidence offered under a cross-examination, as well as on an examination in chief, must be pertinent to the issue, or have some connexion with, or immediate influence on, material evidence adduced on the trial.

A witness cannot be cross-examined upon irrelevant matter, impertinent to the issues in the cause, for the purpose of impeaching him; and when such immaterial evidence has been brought out, it will not authorize the introduction of contradictory proof for such purposes merely.

APPEAL from *Queen Ann's* county court.

This was an action of *Replevin,* commenced by the appellee against the appellant, on the 17th day of October, 1831, for negro boy named *Bill.* Issues were joined upon the pleas of *non cepit,* and property in defendant.

1. At the trial the plaintiff having read to the jury a bill of sale from *Charles M. Stevenson* to *Mary Ann Burgess,* daughter of *George B.* and *Isabella Burgess,* dated February 20th, 1817, of a negro woman named *Rhoda,* and a boy *Bill,* the subject of the present action; and a variety of parol evidence having been offered on either side, a witness named *Thomas Thomas* was called by the plaintiff, who proved that he knew *Rhoda* in 1817, when she lived with

*George B. Burgess.* That the father of witness lived on the farm of *Mary Burgess*, who was a lunatic, and for whom *George B. Burgess* was trustee. That witness, in December, 1817, went to the house of *George B. Burgess*, who then resided in *Church Hill*, to settle with him for the rent of the farm, and that he then saw *Rhoda's* child, at that time an infant. That he took out letters of administration on the estate of his father, *James Thomas*, in June, 1817, and that he did not go to settle with *Burgess* until after he had taken letters. That he saw *Bill* again in the spring of the year 1818, when he again went to the farm of *George B. Burgess*. On the cross examination the witness said, that he did not apply to *Burgess* to know the state of his father's accounts before the date of his letters, that he knew the state of the accounts;—and being further cross examined on that subject, said his father was indebted to *Burgess* for a store account, and for the hire of a negro man, and for a balance of rent. That the rent was not settled between him and *Burgess ;* but they differing, the subject was referred, and was before the arbitrators two years or more ; and that he had never charged his father's estate for the rent in any account passed by him with the Orphans court; and that the amount of the store account, hire, &c., and all his, *Burgess'*, other accounts, except the rent, were included in one account.

The plaintiff then produced a copy of the letters of administration granted to the witness, to prove that they were dated in June, 1817, to corroborate the testimony before given by him. The defendant thereupon offered to produce in evidence an account settled with the Orphan's court by the witness, *Thomas Thomas*, as administrator of *James Thomas*, on the 18th of June, 1818, declaring his object to be to contradict *Thomas Thomas*, and to impeach the accuracy of his recollection, in regard to his having settled the account for rent, and as to the time expended in investigating the claim before the arbitrators. But the court (Earle, Ch. J., and Hopper and Eccleston, A.

J's,) refused to permit the said account to be read to the jury, for the purposes for which the same was offered; being of opinion that the evidence on the first part of the cross examination was collateral and irrelevant to the issues, and that the account cannot be used for the purpose of discrediting the witness, or of showing the inaccuracy of his memory on the cross examination. The defendant excepted.

2. Upon the evidence in the preceding bill of exceptions, and after the court had given the opinion therein expressed, the defendant's counsel moved an instruction to the jury, that they ought not to regard the testimony of the letters of administration which had been offered by the plaintiff, to confirm the recollection of *Thomas Thomas*, the same not being competent and legal testimony; but the court refused the application, and instructed the jury that the letters were properly offered, being competent and legal evidence in the case. The defendant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before STEPHEN, ARCHER, and DORSEY, J's.

*Spencer* for the appellant.

1. It is the province of the jury to weigh the capacity of witnesses, and when there are conflicting witnesses to facts depending on the faculty of memory, it is competent on the cross examination to inquire as to collateral facts, in order that the jury may understand what degree of credit the witness is entitled to.

2. Where one witness gives stronger signs of memory than another, he is the rather to be credited, and in order to enable the jury to ascertain the extent and degree of the faculty belonging to the witness, it is proper and right to examine him as to collateral facts, and to contradict him by other testimony shewing the inaccuracy of his memory.

3. If, however, the opinion of the court in the first exception is sound, then the letters of administration offered by the plaintiff were collateral and irrelevant, and ought to have been rejected. He cited 1 *Stark. Ev.* 135. *Randall's Peake,* 130. 7 *East.* 108. 2 *Sand. Pl. & Ev.* 952. 2 *Stark. Ev.* 455, 516. 1 *Loft Gib.* 298, 299.

*Wm. Carmichael* for the appellee.

Referred to *Phil. Ev.* 210. 5 *Harr. and Johns.* 51. 4 *Stark. Ev.* 380. 1 *Stark. Ev.* 40. 2 *Campb.* 638. 1 *Johns. Dig.* 1060.

DORSEY, J., delivered the opinion of the court.

The question which arises on the *second* bill of exceptions is one which has been so long settled by the universal practice of courts of justice; is so deeply rooted in the plainest principles of reason, justice, and common sense, that it was a matter of some surprise to find it made the subject of grave discussion in this State, in the appellate tribunal of last resort. It is, whether a witness who has given testimony of the occurrence of any event, at a particular period, the time of which is material, can be permitted to strengthen his evidence, by proving that it happened simultaneously with, or before, or after a particular epoch or transaction, the date of which can be proved with greater certainty. Of the legality and propriety of such proof, we cannot be induced to entertain the shadow of a doubt. In the refusal and instruction, therefore, given by the county court in the second bill of exceptions, we entirely concur.

The *first* bill of exceptions presents a very different enquiry. It has been contended by the appellant's counsel, that whether the subject matter of a cross examination has any relevancy or bearing upon the issues made up in the cause, or has any immediate connection with, or pertinence to, any material testimony offered in relation to such issues, is wholly immaterial. That in a cross examination for the purpose of impeaching the testimony of a witness, or in-

volving him in contradictions, or shewing his ignorance, or
the inaccuracy of his memory, he may be interrogated as
to any thing and every thing, without reference to its rele-
vancy to the issues, which by the pleadings in the cause
have been submitted to the jury. To such an unreason-
able, pernicious, and latitudinarian principle, this court can
never yield its sanction. The evidence offered under a
cross examination, as well as an examination in chief, must
be pertinent to the issue, or have some connection with and
immediate influence on material testimony adduced on the
trial. The unjust and mischievous consequences that
would result from the opposite doctrine, are too apparent
to be for a moment overlooked. Trials might be rendered
almost interminable; a single witness might be compelled
to endure a week's examination. He might not only be
examined as to every thing he had ever seen, heard or
thought of, but as to every thing that had entered the
imagination of man. Witnesses without number might be
produced to sustain and impeach his testimony; and the
jury, instead of trying the issues joined in the cause, might
be required to determine a thousand independent, uncon-
nected issues, or matters of fact in which they might be
involved by surprise, in the progress of the cause. The
confusion and injustice, both to witnesses and parties,
resulting from such a course of proceeding, are incalcula-
ble. No witness, however fortified by purity of character
and rectitude of intention, would willingly enter a court of
justice, where he might be called upon to unfold to the
public ear every transaction and thought of his life; and
then leave his testimony impeached and discredited, by
proof, of which he could have no previous knowledge or
anticipation, and consequently had no means of explaining
or refuting. No suitor could go safely to trial, let the
respectability of his witnesses for veracity and integrity be
what it might—such being the imperfection of all know-
ledge of facts derived through the medium of our senses,—
such the frailty of memory, that perhaps there lives not a

human being who could pass through such an ordeal unscathed—whose statements upon some subject or other might not be contradicted, or assailed by the testimony of other witnesses.

The counsel for the appellant has insisted, in an argument of great length, that it is the province of the jury to judge of the credit due to the witnesses, by the degree of intelligence and accuracy of memory evinced by them in their examination; and that their means of forming such judgment are wholly inadequate, if the latitude of cross examination be less extensive than that for which he has contended. The extent to which a jury are required to form an estimate of the intellects and memory of witnesses from their examination in court, is confined to a due appreciation of their testimony, elicited by interrogatories within the limits we have prescribed. If it be desirable further to enlighten the jury upon such subjects, it must be done by a resort to other means than a mere cross examination.

Having disposed of the question, as far as regards the abstract power of the appellant, in the cross examination of the witness, let us now apply the principles of our decision to test the accuracy of the court's opinion in the first bill of exceptions. The witness, *Thomas Thomas*, in his examination in chief, had testified that he knew *Rhoda*, the mother of *Bill*, in 1817, when she lived with *George B. Burgess*; that his father at the time of his death lived on the farm of *Mary Burgess*, who was a lunatic, and for whom *George B. Burgess* was trustee; that the witness, in December, 1817, went to the house of *George B. Burgess*, who then resided in *Church Hill*, to settle with *Burgess* for the rent of the farm, and that while there, he was carried by *Burgess* into the kitchen, where he saw *Rhoda's* child, then an infant, of but a few weeks old; that he took out letters of administration on the estate of his father, *James Thomas*, in June 1817, and that he did not go to settle with *Burgess* until after he had taken out letters. And the witness, on being cross examined, stated that he

did not apply to *Burgess* to know the state of his father's accounts before the date of his letters : that he knew the state of his accounts ; that his father was indebted to *Burgess* for a store account, and for the hire of a negro, and for a store ; besides a balance of the rent. That the rent was not settled between him and *Burgess ;* they having differed, the subject was referred, and was before arbitrators two years or more ; and that he had never charged his father's estate for the rent, in any account passed by him with the Orphans court. The plaintiff then produced the letters of administration, dated June 1st, 1817. All this testimony, with the other proof set forth in the bill of exceptions, being before the jury, without objection by either party, the defendant offered to read in evidence the account passed by the witness, and the co-administratrix of his father, before the Orphans court in June, 1818, containing among other credits the following : " for cash due from said deceased to *George B. Burgess,* trustee of *Mary Burgess,* and paid by these accountants, as per account proved, and receipt allowed $226 74:" declaring the object of the testimony then offered, to be, to contradict *Thomas Thomas,* and impeach the accuracy of his recollection in regard to the passing an account for rent, and as to the time expended in investigating the claim before arbitrators ; but the court refused to permit the said accounts being laid before the jury for the purpose for which the same was offered. As to the correctness of this refusal, we fully concur in opinion with the county court. The testimony which had been offered on the cross examination, unless subsequently made competent by the production of the account for a legitimate purpose, was wholly irrelevant and immaterial to the issues in the cause. If the purpose for which the account was offered, was effectuated—if the facts which it was designed to prove were established or admitted—the evidence given on the cross examination was still left wholly irrelevant, impertinent to the issues, and every material fact proved in relation to them ; and being so, no

testimony contradictory thereof was admissible to impeach the credit of the witness, or shew the inaccuracy of his memory. For the purpose, then, for which the account was offered in evidence, we think it clearly inadmissible, and approve of its rejection as made by the county court. As authorities bearing on some of the views we have expressed in reference to the first bill of exceptions, see *Spencely, qui tam, &c. vs Dr. Willott.* 7 *East,* 108. *Odiorne vs. Winkley.* 2 *Gallis Rep.* 51. 1 *Stark. Ev.* 134. 1 *Phil. Ev.* 227. 2 *Stark. Ev.* 380, 381.

In the court's rejection of the account, they do not declare it admissible evidence for no purpose, but simply that it was inadmissible for the purpose for which it was offered. It was still open to the appellant to offer it as evidence for any other purpose, for which it was legally competent. Had the defendant have offered the account in evidence generally, without specifying his object, or had stated it to be to contradict, or discredit, the testimony of the witness given on his examination in chief, in relation to his statement of having seen *Rhoda's* child, a few weeks old in December, 1817, upon the principles settled by this court in *Davis, et al. vs. Barney.* 2 *Gill and Johns.* 382. *Davis vs. Davis, et al.* 7 *Harr. and Johns.* 36; and *Morris vs. Brickley and Caldwell,* 1 *Harr. and Gill,* 107; there could not have been a doubt as to its legal admissibility. Connecting it with the proof offered on the cross examination, it was testimony legally sufficient to have been submitted to the consideration of the jury. It did tend (in the judicial sense of the word) as used in *Davis, et al. vs. Barney,* to prove the issue, or in other words, did so contribute to prove it, as to warrant the jury, without ranging in the wide field of irrational conjectures or extravagant improbabilities, to have made it the basis of a verdict for the appellant.

The witness, on his examination in chief, had proved that in December, 1817, (after the granting of his letters of administration in the June preceding) he had called on *George B. Burgess* to settle the rent, and saw there

*Rhoda's* child, *Bill,* (the negro in controversy) then but a few weeks old ; and on his cross examination he deposed, that the rent was not settled between him and *Burgess ;* but that having differed as to the rent, it was referred to arbitrators, and remained before them two years or more. The account passed by the Orphans court is evidence, that the witness paid the rent anterior to the 18th of June, 1818. All the statements of the witness, therefore, cannot possibly be true. A part of the testimony elicited by the cross-examination was in direct collision with that given on the examination in chief: both could not stand together. It could not be true, that the controversy about the rent was two or more years before the arbitrators, if the reference had been made as stated by the witness. Which statement was true, the jury only was competent to decide. Should they have believed that the subject of the rent was before the arbitrators two or more years, it was within the scope of their powers to conclude that the reference, though continued afterwards, commenced in the life-time of *James Thomas ;* and that the witness was mistaken in dating his visit to *George B. Burgess'* house in December, 1817; that in truth it occurred in December, 1816; and such a conclusion is by no means irrational or improbable, when viewed as it must have been by the jury, in connection with all the evidence given in the cause. Had the jury believed that the witness had fallen into such a mistake, his testimony, instead of sustaining the plaintiff below, would have strongly supported the defendant's defence.

Concurring in opinion with the county court, on both bills of exception, we affirm the judgment.

JUDGMENT AFFIRMED.