## HOWARD v. STATE

[No. 286, September Term, 1963.]

411

412

*Decided April 14, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Thomas J. Curley* for the appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Marvin H. Anderson, State's Attorney for Anne Arundel County,* and *Cornelius F. Sybert, Jr., State's Attorney for Howard County,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Convicted by a jury of murder in the first degree and sentenced to death, George Wesley Howard appeals. The time of the alleged murder was about 7:30 a. m. on June 29, 1962. The place was within the confines of the Maryland House of Correction. The principals were inmates Matthew Spence, the

victim, Herbert Avon Johnson, his close friend and the State's chief witness, and the appellant Howard. Spence and Johnson had just left the dining hall after having had breakfast together and were proceeding toward their respective cells located on tier E-1. The two men separated briefly when Johnson went to another tier to get a cup of coffee. He then continued toward tier E-1 and was just outside the barred gate entry to the tier when he became engaged in a conversation with another inmate. While thus engaged, Johnson saw Spence standing within tier E-1 and apparently talking with the inmate whom Johnson identified as Howard. According to Johnson's testimony, Spence and Howard were facing each other in such fashion that he could see Spence's face and Howard's back. While Johnson observed Spence's lips moving, he could hear nothing that was spoken because of the prevalent noise.

Presently Spence beckoned to Johnson who thereupon moved toward the entry to tier E-1. As he was walking he observed Howard lunge suddenly at Spence, apparently striking him with an object. Spence staggered backward a step or two and through the open door of cell E-1-3, which happened to be Johnson's. His arm apparently jarred the cell door, for it began to slide, closed, and locked. Johnson, who estimated that he had been about thirty-five feet from the pair when Spence had beckoned, arrived at the closed door of his cell and looking into it, saw Spence slumped on the cot. Just then he felt a blow to the lower left portion of his back delivered by Howard. Johnson retaliated with a blow that drove the appellant some distance away. There followed a brief but active skirmish between the two men. Johnson testified that Howard had in his fist an object that seemed to resemble the blade of a knife. After being cut by the object several times during the scuffle Johnson managed to run out of the E-1 tier with Howard in pursuit. At about that time Guard Brown rushed into the tier to break up the fight, but Howard eluded him. He was finally seized by Guard Cox as he was climbing the stairs to E-2 in pursuit of Johnson and turned over to Guard Brown, who led him to the first floor. Howard broke away, ran into tier E-1 and made a dive into a pile of trash with Brown leaping on top of him. Guards Cox and Brown each testified that they saw Howard throw up his

arm as though hurling an object up toward the second tier. The murder weapon was not recovered.

After taking the appellant into custody, Cox then checked the cell in which Spence lay, found him sprawled across the cot with blood evident near the breast pocket of his shirt, and had him removed to the infirmary. Dr. Yosuico, the prison physician, was summoned and arriving within minutes he pronounced Spence dead. An autopsy revealed that death resulted from a single stab wound which entered the chest at the mid-line, penetrated four inches and pierced the breast bone, aorta, and the top of the left lung. Johnson was treated at the infirmary for the stab wounds Howard had inflicted, some of which required sutures.

The appellant makes three contentions. One is that the trial court erroneously refused to specifically include in its advisory instructions to the jury the following prayer offered by the appellant:

> "2. The benefit of any doubt as to the cause or reason of the killing should be resolved in the defendant's favor."

Judge Macgill's instructions were thorough and concise. The essence of the instruction requested was in fact incorporated in the court's advisory charge though in somewhat different phraseology. After a careful and manifestly fair instruction on the presumption of innocence of the appellant and the State's burden of proof of guilt, the court thereafter defined for the jury manslaughter and the degrees of murder, and the legal differences between them including the burden of proof as to each. It is impossible to see how the appellant could have been prejudiced by the lower court's refusal to instruct in the literal language of the prayer as requested.

Another contention raised by Howard is that the trial court erred in refusing to permit him to offer testimony through witnesses to impeach the credibility of Johnson, the State's chief witness. On cross-examination he had been asked without objection whether he had trafficked in contraband with Howard or with any other inmates within the prison, to which he re-

plied in the negative. Later, on behalf of the defense three witnesses, inmates of the House of Correction at the time of the homicide, were offered. It was intended that they testify for the sole purpose of raising an inference that Johnson had lied on cross-examination. Only one actually testified, for when the question "Have you ever purchased contraband from Herbert Johnson?" was put to him, the State objected on the ground of irrelevancy. The court sustained the objection, stating that the defense was raising a collateral issue. The other two proffered witnesses did not testify because the court stated that a similar ruling would be made as to the State's objection to the same line of questioning.

While this Court has adopted the general rule that a witness may be cross-examined on matters which test his credibility, *Mahan v. State,* 172 Md. 373, 191 Atl. 575, one qualification or exception to the rule is that a witness may not be impeached by showing he has made statements which contradict his testimony on collateral or irrelevant issues. *Kantor v. Ash,* 215 Md. 285, 290, 137 A. 2d 661; 3 Wigmore, *Evidence* (3d ed.), Section 1001 *et seq.;* Strahorn, *Extra-Legal Materials and The Law of Evidence,* 15 Md. L. Rev. 330, 353. Appellant admits there is nothing in common with regard to the issues of homicide and contraband *inter sese,* but he now contends that inquiry into contraband should have been allowed, if for no other reason, to show the nature of the relationship between the appellant and the chief prosecuting witness. We think the inquiry went to a matter so remote that its exclusion did not constitute an abuse of discretion.

Finally, the most serious contention of the appellant is that the State failed to prove deliberation and premeditation, although counsel conceded that the record establishes murder in the second degree. Although we set forth Hochheimer's definitions of *deliberate* and *premeditated* as recently as *DeVaughn v. State,* 232 Md. 447, 194 A. 2d 109, it might be appropriate to reiterate them. In his work, *Criminal Law and Procedure* (2d ed.), Section 347 he defines deliberate as "full and conscious knowledge of the purpose to [kill]," and *premeditated* as meaning "the design must have preceded the killing by an appreciable length of time, time enough to deliberate."

In his brief the appellant has cited a number of our more recent decisions upholding convictions of first degree murder where the motive for the crime was shown and seeks to distinguish those cases from the instant case on the basis that the State did not prove the motive for this homicide as bearing upon the appellant's state of mind with respect to deliberation and premeditation. We have carefully reviewed the record and have concluded that there were sufficient facts from which the jury properly could have drawn inferences to support the findings of premeditation and deliberation, on which they were given careful and accurate instructions, as we have said.

The couple of minutes during which Howard must have been conversing with the victim, all the while with his hand in his pocket where, it might be inferred, was the murder weapon, certainly gave him opportunity to reflect and decide. The blow itself not only was aimed at a vital part of the body, but was executed with such force that the blade penetrated the chest plate bone and to a depth of four inches, indicating a full and conscious knowledge of a purpose to kill. An additional fact tending to show premeditation was that the homicide was committed by a prisoner with a concealed weapon, the possession of which was patently unlawful. Absent any evidence of fear on Howard's part for his own safety, it could be reasoned that he assumed the high risk of discovery of the weapon because of a resolute determination to use it.

Finally, the conviction of first degree murder finds support in the actions of the appellant after the fatal stabbing. Movements of one accused of murder shortly before and after the commission of the alleged crime are admissible to show culpability. *Cothron v. State,* 138 Md. 101, 113 Atl. 620. The same is true with actions. In *Chisley v. State,* 202 Md. 87, 95 A. 2d 557, we indicated that relevant to the issue of premeditation was the threatening of some one after the homicide had occurred. The determined effort by Howard to assault and, we think it could be inferred, to kill Johnson, the only eyewitness to the crime and a close friend of the victim, was further evidence from which the jury might have found the State had carried its burden of showing premeditation and deliberation.

Finding no reversible error presented by the contentions of the appellant the judgment must be affirmed.

*Judgment affirmed.*