## JAMES HARLEY JENKINS *v.* STATE OF MARYLAND

[No. 314, September Term, 1971.]

*Decided December 22, 1971.*

The cause was submitted on briefs to MORTON, ORTH and MOYLAN, JJ.

Submitted by James P. Salmon for appellant.

Submitted by *Francis B. Burch, Attorney General, James G. Klair, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* for appellee.

ORTH, J., delivered the opinion of the Court.

JAMES HARLEY JENKINS was convicted by a jury in the Circuit Court for Prince George's County of the murder in the second degree of Donald Glenn Oliver. We have no need to recount the sordid circumstances surrounding the homicide. Jenkins presents four questions on his appeal from the judgment and we shall answer them within the meaning contemplated by the precise wording of their asking, noting, however, that some of the questions as framed include conclusions which are not correct.

### (1)

"Did the trial judge err in his determination that Paula Oliver was a 'surprise witness'? The rule is that where

a party satisfies the court that he has been taken by surprise by a witness he has offered in that the testimony is contrary to what he had a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted. *Hernandez v. State*, 7 Md. App. 355, 365. We cannot say here that the trial judge was improperly satisfied that Paula Oliver was a "surprise witness." There was evidence tending to show that on 29 October 1970 she had given the police a written statement concerning the homicide and an oral statement, the same in substance, just before a scheduled date of trial in January. That trial was postponed. A few days before the trial here the prosecutor interviewed her again but in the presence of her mother and the appellant, her stepfather, who was out on bond. When it appeared that her version of the event was not consistent with that in her prior written and oral statements, the prosecutor continued the interview of her out of the presence of her mother and stepfather and "she gave the exact same story she gave the day of the crime and some two months thereafter." She said that if her stepfather knew she had told the police the truth "she would be dead before he got to trial and so would the other children." On the stand her testimony varied in material aspects from the prior written and two oral statements and the prosecutor claimed surprise. We think the prosecutor had a right to expect that under oath her testimony would not be inconsistent with her previous statements. Thus the determination by the judge that the State was taken by surprise was not error. Compare *Gray v. State*, 219 Md. 557 where the witness repudiated her statement the day after she gave it and was steadfast thereafter in that repudiation.

### (2)

"Even if it be assumed that Paula Oliver was properly determined to be a surprise witness, did the trial judge err when he allowed the State's Attorney to examine the witness in regard to matters which were prejudicial

to defendant and clearly collateral to the issues relevant to the case?" Since the trial judge was satisfied that the State was taken by surprise by Paula Oliver's testimony, the State could examine her to lay a foundation to admit evidence of prior inconsistent statements. The foundation being laid, it was not an abuse of judicial discretion to permit proof of prior inconsistent statements. The matters which appellant now challenges were part of the laying of the foundation and the proof of the prior inconsistent statements. Such proof did not go to the guilt *vel non* of appellant nor was it for the purpose of discrediting the witness. It was only to contradict the witness and thereby afford the State an opportunity to show why it called her. *Sanders v. State,* 1 Md. App. 630. In this frame of reference it cannot be characterized as "clearly collateral to the issues relevant to the case." All of this, upon request, could have been, and in part was, explained to the jury in the court's charge. We find no error in the rulings with respect to the examination of Paula Oliver.

### (3)

"Did the trial judge err in allowing the State's Attorney to cross-examine Mrs. Jenkins as to matters outside the scope of her direct examination and as to matters which were collateral and prejudicial to defendant?" Mrs. Elizabeth Jenkins was the current wife of appellant and former wife of the deceased. She was called by appellant to testify in his behalf. The basic rule is as set out in *Williams v. Graff,* 194 Md. 516, 522 and quoted in *Shupe v. State,* 238 Md. 307, 311:

> "* * * where a witness is called to testify on a particular point, the adverse party in the cross-examination of the witness is restricted to the point on which he testified and cannot question him in regard to other issues in the case. * * *."

As *Williams* points out, the basic rule has an extension:

> "However, our rule does not go to the extent

of restricting the cross-examination of the witness to the specific details inquired into on direct examination, but permits full inquiry into the subject matter entered into. Where a general subject has been entered upon in the examination in chief, the cross-examining counsel may ask any relevant question on the general subject. * * *."

There is also an adjunct to the basic rule as extended:

"[A] witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to parties or cause, his bias or the like." *Howard v. State,* 234 Md. 410, 415; *Bryant v. State,* 4 Md. App. 572, 580.

The adjunct has an aspect involving prior contradictory statements. The first question considered above concerned proof by a party of prior inconsistent statements made by his own witness, the object of which is not to discredit the witness but to contradict him so as to show why he was called. The question now considered concerns proof by a party of prior inconsistent statements made by a witness called by an adverse party, the object of which is to discredit the witness by so impeaching him. Of course he may be asked questions on cross-examination to lay a foundation to admit evidence of prior contradictory statements. The rule is, therefore, that upon the laying of a proper foundation (no point is here raised as to the laying of a proper foundation), the credit of a witness may be impeached by showing he has made statements which contradict his testimony in respect to material facts. If the witness denies making the designated statements or asserts he does not remember whether he did or did not make them, impeaching testimony can be offered. *Sanders v. State, supra,* at 640-641.

It is firmly established that the allowance or disallowance of certain questions on cross-examination is nor-

mally left to the sound discretion of the trial judge. *Holt v. State,* 3 Md. App. 544. We see no abuse of discretion here. We believe the challenged questions were proper as likely to affect the credibility of Mrs. Jenkins, test her memory, show her bias and reveal her relation to the appellant and the cause. We observe that evidence which explains the actions and movements of the accused, or supplies a motive for the crime, or constitutes preparation for the crime, is admissible. *MacEwen v. State,* 194 Md. 492; *Johnson v. State,* 9 Md. App. 327, 333.

The questions posed by the State on cross-examination of Mrs. Jenkins attempted to elicit that she had related to the authorities that she called the deceased and told him that their daughter was having "a relationship" with Jenkins. On the day of the homicide she, the deceased and Paula went to Seat Pleasant and to Hyattsville to obtain a warrant for the arrest of Jenkins on a charge of raping Paula. Unsuccessful, they went to a trailer park in College Park where Jenkins was then living. Jenkins was not in his trailer and they returned to Mrs. Jenkins home. Jenkins was there and shot and killed Oliver as he was entering the house. There were also questions concerning alleged phone calls by Mrs. Jenkins to Oliver trying to convince him to beat up Jenkins. Other questions concern an incident around labor day when Jenkins, accompanied by his wife and Paula, went to Oliver's house with a gun to kill him. Mrs. Jenkins did not recall making a statement to the police, either orally or in writing and when portions of a statement bearing her signature were read to her she said she did not recall saying such things or was not sure she had said them. At one point in the cross-examination of her the court said in overruling objections:

> "I think the area here for impeachment is rather broad and she has told her story about what happened. I think that anything that is at all relevant to the case is a proper area of cross examination."

We are in accord. The questions probed relevant matters. We find no error in the cross-examination of Mrs. Jenkins in the frame of reference of the challenges.

### (4)

"Did the trial judge improperly allow the State to call rebuttal witness Porter in order to contradict testimony of Mrs. Jenkins when the contradicted testimony was itself collateral to the relevant issues in this case and prejudicial to defendant?" This question becomes lucid in the light of the brief argument in support of it. Porter, a police officer, testified in rebuttal that Mrs. Jenkins complained to him that Paula had been raped by Jenkins. She had attempted to obtain a warrant for Jenkins' arrest on the charge about 2:30 p.m. shortly before the murder. The warrant was not issued. Appellant says: "Porter was a proper rebuttal witness only if the cross-examination of Mrs. Jenkins was proper * * *." We have found her cross-examination was proper as within the sound discretion of the trial judge. We find no error in the receipt of the testimony of Porter in rebuttal.

In affirming the judgment here, we urge close compliance with the rules applicable and the procedures indicated to be followed when proof of prior inconsistent statements is sought to be permitted, both with respect to a party's own witness and the witness of an adverse party. See *Vandergrift v. State,* 13 Md. App. 777; *Hernandez v. State, supra; Minor v. State,* 6 Md. App. 82; *Baldwin v. State,* 5 Md. App. 22; *Williams v. State,* 4 Md. App. 558; *Plumley v. State,* 4 Md. App. 671; *White v. State,* 3 Md. App. 167; *Sanders v. State, supra;* and ca es cited in those opinions.

*Judgment affirmed.*