FRANCES ESTER SMITH *v.* STATE OF MARYLAND

[No. 451, September Term, 1973.]

*Decided February 19, 1974.*

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Jack B. Rubin* and *Lee Gordon* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Joseph J. Wase* and *Bernard Kole, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Frances Ester Smith, was convicted in the Criminal Court of Baltimore by a jury, presided over by Judge Charles D. Harris, of murder in the second degree. Upon this appeal, she raises three contentions:

(1) That the trial court erred in refusing to permit testimony aimed at impeaching a key State's witness;

(2) That the trial court erred in refusing to allow the introduction of evidence concerning the violent character of the victim; and

(3) That the Maryland law presuming all unlawful homicide to be murder in the second degree is unconstitutional.

On October 7, 1972, at approximately 8:50 p.m., a shooting occurred at 1710 N. Fulton Avenue. When Officer David Brice and Officer Edward Brown arrived at the crime scene, three blocks from where they received the call, they found the victim, Johnnie James Smith, lying on the ground "with a hole the size of a grapefruit in his stomach." Beside him was a sawed-off shotgun. A few feet away stood the appellant. Officer Brice asked the victim who had shot him and the victim stated, "She did," indicating the appellant. According to both officers, the appellant responded, "Yes, I

shot the sonofabitch." The appellant was then placed under arrest. As the officers started to lead her away, she pulled away from Officer Brown and "started stomping Mr. Smith in the gunshot wound." As she did so, she shouted, "I didn't mean to shoot you, I meant to kill you." The appellant was the ex-wife of the victim. The victim died on October 13, six days later.

The victim's wife, Jeanette Smith, testified that a few minutes before the shooting, the appellant knocked on the door and stated that she wanted to see her ex-husband. The appellant was carrying a paper bag under her right arm. Jeanette Smith shortly thereafter drove away in her car, but observed, upon leaving, that the appellant and her husband were talking on the sidewalk in front of the house.

Mrs. Christine Ledbetter, the victim's mother-in-law, also observed the appellant come to the victim's home. She also observed the brown paper bag. A few minutes later, while looking through a front window, she observed the appellant and the victim standing outside. She heard harsh words between them, saw the victim appear to be starting back toward the house, and saw the appellant shoot him without removing the gun from the paper bag. She saw the appellant drop the gun and the bag and then kick the victim. She immediately called the police.

The appellant admitted her presence at the scene of the shooting, but said that the gun went off accidentally as she struggled with the victim to take the gun away from him. She stated that the victim produced the gun.

Officer Brown was asked whether during his visit with the victim at Lutheran Hospital, the victim had told him that the shooting was accidental. Officer Brown was subsequently asked whether he had passed on such a comment to James Watkins, an investigator for the Public Defender's Office. Officer Brown could not recall either receiving such information from the victim or passing on such information to James Watkins. The defense, just before closing its case, made the following request in a conference at the bench:

"(Mr. Press) Your Honor, the defense would proffer

that if James Watkins of the Public Defender's staff was allowed to testify he would state that on the date of January 26, 1973 he had a telephone conversation with Officer Edward Brown of the Baltimore City Police Department. In the course of that conversation Mr. Watkins was informed that the deceased Johnnie Smith, on visiting the hospital, being confronted by Officer Brown, was told that this incident was an accident.

(The Court) I'll sustain the objection. Do you object to the proffer?

(Mr. Wase) Yes, Your Honor. I do.

(The Court) I'll sustain the objection to the proffer."

The defense thesis is that Officer Brown, at least on cross-examination, affirmatively denied making a particular statement to James Watkins. James Watkins was being offered to impeach the credibility of Officer Brown by demonstrating that Officer Brown had made a prior statement inconsistent with his trial testimony. We hold, however, that Judge Harris acted properly in refusing to permit such extrinsic evidence of "self-contradiction."

The rule as to impeaching a witness by showing a prior inconsistent statement requires that the statement be with respect to "material facts (but not in respect to facts that are collateral, irrelevant or immaterial)." *Sanders v. State*, 1 Md. App. 630, 640, 232 A. 2d 555.

The cross-examination of Officer Brown in the first instance was undoubtedly proper, even if the ostensible statement made by him to James Watkins was as to a "collateral" fact rather than a "material" fact. With respect to merely "collateral" matters, however, the cross-examiner must "take the answer." He may only introduce extrinsic evidence of contradiction where the statement in issue was as to a "material" fact. The principle is well enunciated in McCormick, *Law of Evidence*, Ch. 5, "Impeachment and Support," § 36, "The Subject-Matter of the Inconsistent Statements," p. 66:

> "On cross-examination we have seen that strict rules of relevancy are relaxed, and generally the trial judge in his discretion may permit the cross-examiner to inquire about any previous statements inconsistent with assertions, relevant or irrelevant, which the witness has testified to on direct or cross. At this stage, there is no requirement that the previous impeaching statements must not deal with 'collateral' matters. But as appears in the next paragraph, if the inquiry on cross-examination is as to inconsistent statements about 'collateral' matters, the cross-examiner must 'take the answer' — he cannot bring on other witnesses to prove the making of the alleged statement.

> At this latter stage, of extrinsic evidence, that is, the production of attacking witnesses, for obvious reasons of economy of time and attention, the range of impeachment by inconsistent statements is sharply narrowed. The tag, 'You cannot contradict as to collateral matters,' applies, and here the meaning is that to impeach by extrinsic proof of prior inconsistent statements, such statements must have as their subject (1) facts relevant to the issues in the cause, or (2) facts which are themselves provable by extrinsic evidence to discredit the witness."

The question at bar is whether the disputed conversation between Officer Brown and James Watkins dealt with a "collateral" fact or a "material" fact. McCormick, *op. cit.*, is again instructive, at § 47, "Impeachment by 'Contradiction': Disproving the Facts Testified to by the First Witness," p. 101:

> "What is to be here regarded as within this protean word of art, 'collateral'? This will best be answered by inquiring as to what facts are not within the term, and thus finding the escapes from the prohibition against contradicting upon

collateral facts. The classical approach is that facts which would have been independently provable regardless of the contradiction are not 'collateral.' "

Dean Wigmore, in 3A *Wigmore on Evidence* (Chadbourn Revision, 1970), § 1020, "Test of collateralness," stated the nub of the distinction between a collateral fact and a material fact, at p. 1010:

"The only test in vogue that has the qualities of a true test — definiteness, concreteness, and ease of application — is that laid down in *Attorney-General v. Hitchcock: Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?* "
(Emphasis in original text)

*Wigmore* then quotes from Chief Baron Pollock in *Attorney-General v. Hitchcock*, 1 Exch. 91 (1847), at 99:

"My view has always been that the test whether the matter is collateral or not is this: If the answer of a witness is a matter which you would be allowed [independently] on your part to prove in evidence, if it have such a connection with the issue that you would be allowed to give in evidence, then it is a matter on which you may contradict him. . . I think the expression 'as to any matters connected with the subject of inquiry' is far too vague and loose to be the foundation of any judicial decision. And I may say I am not at all prepared to adopt the proposition in those general terms, that a witness may be contradicted as to anything he denies having said, provided it be in any way connected with the subject before the jury. It must be connected with the issue as a matter capable of being distinctly given in evidence . . ."

Baron Alderson, in the same case, expressed the test in the following words:

"The question is this, Can you ask a witness as to

what he is supposed to have said on a previous occasion? You may ask him as to any fact material to the issue, and if he denies it you may prove that fact, as you are at liberty to prove any fact material to the issue."

·In the case at bar, the critical "fact, as to which the prior self-contradiction is predicated" is an ostensible statement from the ultimate murder victim, from his hospital bed, to Officer Brown, in which he stated that the gun had gone off by accident. That statement was neither shown nor alleged to have been "a dying declaration." It did not, therefore, qualify as an exception to the hearsay rule, and was inadmissible as direct evidence. Since the appellant could not have offered evidence of such a statement "for any purpose independently of the self-contradiction [of Officer Brown]," the fact of the statement was "collateral" and not "material." Under the circumstances, Judge Harris ruled properly in refusing to permit extrinsic evidence for the purpose of contradicting the trial testimony of Officer Brown that he had never heard such a statement. Cf. *Jenkins v. State*, 14 Md. App. 1, 285 A. 2d 667; *Williams v. State*, 15 Md. App. 320, 333-335, 290 A. 2d 542.

We note, moreover, that even had this evidentiary ruling been erroneous (and we hold that it was not), the error would have been harmless beyond a reasonable doubt under *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967). The testimony of Jeanette Smith placed the shotgun, concealed in the paper bag, in the hands of the appellant when she arrived to confront her ex-husband. The testimony of Christine Ledbetter had the appellant angrily confront her ex-husband and then shoot him at point-blank range. The testimony of Officer Brice had the appellant standing over her victim, kicking at his wound, and stating quite explicitly that she had shot him because she meant to kill him and that she wished him dead. The testimony of Officer Brown simply paralleled and was cumulative to the testimony of Officer Brice.

The appellant's two remaining contentions need not detain us long. She complains that the trial court did not permit

her to introduce evidence of the victim's prior criminal record, upon which she predicated her fear of the victim's violent nature. Such a state of mind and the basis for such a state of mind might be relevant, had the appellant attempted to establish the affirmative justification of self-defense. The appellant took the stand, however, and asserted that the gun went off by accident. Since she did not assert that she purposely pulled the trigger and that she did so in defense of life and limb, her state of mind in ostensible justification for such action is irrelevant.

The appellant's final contention is that the court's instruction to the jury on the presumption of felonious homicide being murder in the second degree is unconstitutional. Although *Wilkins v. State*, 16 Md. App. 587, 300 A. 2d 411, is fully dispositive of the issue on the merits, the short answer to the contention is that the appellant took no exception to the court's instruction. There is, therefore, nothing before us for appellate review. Maryland Rule 756 f; Maryland Rule 756 g; Maryland Rule 1085.

*Judgment affirmed.*