# SMITH *v.* STATE OF MARYLAND

[No. 50, September Term, 1974.]

*Decided November 25, 1974.*

*Motion for rehearing filed December 19, 1974; denied and opinion modified January 6, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Jack B. Rubin* and *Lee Gordon, Assigned Public Defenders,* for appellant.

*James I. Keane, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. SMITH and O'DONNELL, JJ., dissent and SMITH, J., filed a dissenting opinion in which O'DONNELL, J., concurs at page 163 *infra.*

After being convicted of murder in the second degree in the Criminal Court of Baltimore, appellant took an appeal to the Court of Special Appeals. There, she unsuccessfully sought to attack her conviction on three grounds. The decision on one of those grounds has led to this further appeal. We granted certiorari to review "the question whether the trial court erred in refusing to permit [certain] testimony aimed at impeaching a key State's witness."

The major defense to the charge of homicide was that the sawed-off shotgun which caused the death of the victim — appellant's former husband — had been fired accidentally as she struggled to take the gun from him. Among the

witnesses testifying for the State was Officer Edward Brown, of the Baltimore City Police Department, who arrived at the scene before the victim, who was still alive, and appellant had been removed. When Officer Brown's partner, Officer Brice, asked the victim who had shot him, he identified appellant. According to the police officers, she acknowledged rather emphatically that she had done so, saying " 'Yes, I shot the son of a bitch.' "; and also that she had fully intended to do so. The underlying testimony from which the evidentiary issue arises occurred on cross-examination of Officer Brown when this exchange ensued:

"Q. . . . . [W]hat did Mr. Smith say in response to any questions applied to him at that time about this altercation. A. He said that Frances had shot him and he would get her.

"Q. Do you recall Officer Brown approximately on January 23rd, 1973 receiving a telephone call from a Mr. James Watkins of the Public Defender's investigative staff? A. Yes, I do.

"Q. Now in that conversation with Mr. Watkins, isn't it true that you told him at that time that on your visit to the hospital this day in question that the deceased stated or Mr. Smith stated at that time that the shooting was accidental? A. I don't recall saying that.

"Q. Are you positive of that, sir? A. That's correct.

"Q. In other words you never said this statement to anyone or any relatives of Mrs. Smith, the accused or anyone in particular about this? A. No, I have not."

At the conclusion of appellant's case-in-chief, for the purpose of impeaching the credibility of Officer Brown with a prior inconsistent statement, her trial counsel tendered the following proffer:

" . . . Your Honor, the defense would proffer that if

James Watkins of the Public Defender's staff was allowed to testify he would state that on the date of January 26, 1973 he had a telephone conversation with Officer Edward Brown of the Baltimore City Police Department. In the course of that conversation Mr. Watkins was informed that the deceased Johnnie Smith, on visiting the hospital [sic], being confronted by Officer Brown, was told [sic] that this incident was an accident.

"THE COURT: I'll sustain the objection. Do you object to the proffer?

"MR. WASE [State's Attorney]: Yes, Your Honor. I do.

"THE COURT: I'll sustain the objection to the proffer.

\* \* \*

"THE COURT: I haven't made my ruling yet. For the following reasons the testimony would be double hearsay and would be admissible only if it was shown that a statement made by the deceased, alleged statement made by the deceased was a dying declaration. There's no evidence whatever to show that it was such. . . . For that reason the Court will not allow the witness to testify to the hearsay statements or to any statements, such statements made by the decedent on the grounds that they were a dying declaration. You now have an exception."

On appeal to the Court of Special Appeals, the conviction was affirmed, *Smith v. State*, 20 Md. App. 254, 315 A. 2d 76 (1974), that court holding that the trial judge did not err in rejecting the proffered testimony. In essence, it rested this holding on the proposition that:

"The rule as to impeaching a witness by showing a prior inconsistent statement requires that the statement be with respect to 'material facts (but not in respect to facts that are collateral, irrelevant

or immaterial).'" 20 Md. App. at 257 (citation omitted).

The court further stated:

"The cross-examination of Officer Brown in the first instance was undoubtedly proper, even if the ostensible statement made by him to James Watkins was as to a *'collateral' fact rather than a 'material' fact.* With respect to merely 'collateral' matters, however, the cross-examiner must 'take the answer.' He may only introduce extrinsic evidence of contradiction where the statement in issue was as to a *'material' fact* . . . ." 20 Md. App. at 257 (emphasis added).

The Court of Special Appeals then correctly posited:

"The question at bar is whether the disputed conversation between Officer Brown and James Watkins dealt with a *'collateral' fact or a 'material' fact.* . . ." 20 Md. App. at 258 (emphasis added).

Relying heavily on *McCormick on Evidence,* § 47 (2d ed. 1972), 3A *Wigmore on Evidence,* § 1020 (Chadbourn rev. 1970) and the landmark case of *Attorney-General v. Hitchcock,* 1 Exch. 91 (1847), the court held:

"In the case at bar, the critical 'fact, as to which the prior self-contradiction is predicated' is an ostensible statement from the ultimate murder victim, from his hospital bed, to Officer Brown, in which he stated that the gun had gone off by accident. That statement was neither shown nor alleged to have been 'a dying declaration.' *It did not, therefore, qualify as an exception to the hearsay rule, and was inadmissible as direct evidence. Since the appellant could not have offered evidence of such a statement 'for any purpose independently of the self-contradiction* [of Officer Brown],' *the fact of the statement was 'collateral' and not 'material.'* Under the circumstances, Judge Harris ruled properly in refusing to permit extrinsic evidence for

the purpose of contradicting the trial testimony of Officer Brown that he had never heard such a statement. . . ." 20 Md. App. at 260 (emphasis added).

Implicit in this opinion is a recognition that the proffered testimony was, itself, not hearsay, since it was being offered only to impeach a key State witness, and not for its truth. The court, however, affirmed the trial court on the ground that extrinsic evidence may not be used to impeach a witness on a collateral matter; that the test for determining when evidence is collateral is whether the fact upon which the prior inconsistent statement was predicated could have been shown in evidence for any purpose independently of the contradiction; and that since the fact upon which the prior statement was predicated — the victim's statement to Officer Brown that the shooting was accidental — was not a dying declaration and, thus, hearsay, it would not have been admissible independently of the contradiction. Hence, the court reasoned, it was collateral, and could not be used to impeach the witness's credibility.

A witness generally may be cross-examined on any matter relevant to the issues, and the witness's credibility is always relevant. Therefore, a witness, whether a party to the action or not, may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or the cause, his bias, or the like, *Harris v. State*, 237 Md. 299, 302, 206 A. 2d 254 (1965); *Howard v. State*, 234 Md. 410, 415, 199 A. 2d 611 (1964); *Kantor v. Ash*, 215 Md. 285, 290, 137 A. 2d 661, 69 A.L.R.2d 585 (1958). There are, however, restrictions upon the extent to which extrinsic evidence may be used to impeach a witness, such evidence generally not being allowed on a collateral or irrelevant matter. In such cases, the cross-examiner is bound by the answer of the witness, *Harris v. State, Howard v. State*, both *supra; City Pass. Ry. Co. v. Tanner*, 90 Md. 315, 320, 45 A. 188 (1900).

Cross-examination, of course, is not without limitations. There may be cases where the subject matter has no relevance at all, not even to impeach the witness's

158

credibility. An early example is *Sloan v. Edwards*, 61 Md. 89 (1883), a case of assault and battery. There, a defense witness testified that he saw the plaintiff after the incident, and that the latter was not hurt. The witness was asked on cross-examination whether he had subsequently told the plaintiff that the assault had been a great outrage, to which he replied in the negative. The plaintiff then sought unsuccessfully to impeach the witness by introducing extrinsic evidence that he had made such a statement. Our predecessors affirmed on the ground that the prior statement, even if admitted by the witness, had no relevance to the case. The Court said:

> "It is true, the credit of a witness may be impeached by proof that he has made statements out of court, inconsistent with his testimony given in court. But it is a general rule that a witness cannot be cross-examined as to any fact, which, if admitted, would be wholly *collateral, and irrelevant* to the matters in issue, for the purpose of contradicting him by other evidence, and in this manner to discredit his testimony. And if the witness answer such an *irrelevant* question without objection, evidence cannot afterwards be admitted to contradict his testimony on the collateral matter. . . ." 61 Md. at 105 (emphasis added).

In essence, the Court held that evidence which is otherwise irrelevant cannot become relevant simply because it is capable of being contradicted, and will thereby impeach the witness; and that if such irrelevant evidence is admitted, it cannot be contradicted by extrinsic evidence. *Harris v. State, supra,* 237 Md. at 302; *Kantor v. Ash, supra,* 215 Md. at 290; *Consol. Beef Co. v. Witt & Co.,* 184 Md. 105, 112, 40 A. 2d 295 (1944).

Even in the case of subject matter which may be validly pursued on cross-examination, the witness can be impeached by extrinsic evidence only with regard to material facts and not with respect to facts that are *collateral, irrelevant* or *immaterial* to the issues of the case, *Howard v. State, supra,*

at 415 (where state's witness in murder case denied trafficking in heroin on cross-examination, impeaching witness not allowed to testify that first witness had trafficked in heroin); *Quimby v. Greenhawk*, 166 Md. 335, 345, 171 A. 59 (1934) (where witness in will contest testified that she had never been paid for services rendered to decedent, extrinsic evidence to contradict her disallowed); *Lanasa v. State*, 109 Md. 602, 614-15, 71 A. 1058 (1909) (where alleged co-conspirators testified against defendant in conspiracy trial, receiving light sentences in return, and one of co-conspirators denied on cross-examination telling lawyer that he was not guilty, held that testimony of lawyer as to prior inconsistent statement — that he was not guilty of conspiracy — should have been admitted); *City Pass. Ry. Co. v. Tanner, supra*, 90 Md. at 320; *Davis v. State*, 38 Md. 15 (1873); *Goodhand v. Benton*, 6 G. & J. 481 (1834).

The rule preventing impeachment of a witness by extrinsic evidence on a collateral matter is aimed at preventing inconvenience, loss of time, unfair surprise to the witness and confusion of the issues, *Attorney-General v. Hitchcock, supra;* 3A *Wigmore on Evidence, supra*, §§ 1001, 1002, 1019. A weighing of various considerations is involved. First, a contradiction on a material issue has great probative force and goes far to discredit a witness, while contradiction on a collateral or immaterial issue lacks much of this quality. Second, contradiction on a collateral point injects a new issue into the trial, thereby causing confusion of the issues; whereas contradiction on a material point does not do so, since the material issue is already before the trier of fact. Third, while a witness is prepared for contradiction on a material fact, realizing it is in issue, he may be subject to unfair surprise by contradiction based on a collateral matter for which he is not prepared to defend himself. All of these considerations have occasioned the distinction between contradiction on collateral and non-collateral facts. From this, has arisen the uniform rule excluding extrinsic impeachment on a collateral matter.

The critical question, however, as the Court of Special Appeals recognized, is what is meant by "collateral," a term

which we have not defined in this context. The landmark case on this point is *Attorney-General v. Hitchcock, supra,* which held that the proper test is whether the fact, as to which the error is predicated, could have been shown in evidence for any purpose independently of the self-contradiction. This appears to be the majority rule in the United States, *State v. Mangrum,* 403 P. 2d 925 (Ariz. 1965); *People v. Wells,* 33 Cal. 2d 330, 202 P. 2d 53 (1949), *cert. denied,* 338 U. S. 836, 70 S. Ct. 43, 94 L. Ed. 510 (1949); *Hampton v. United States,* 318 A. 2d 598 (D.C. App. 1974); *State v. Kouzounas,* 137 Me. 198, 17 A. 2d 147 (1941); *State v. Long,* 280 N. C. 633, 187 S.E.2d 47 (1972); *Smith v. Wilkins,* 403 P. 2d 485 (Okla. 1965); 3A *Wigmore on Evidence,* §§ 1003, 1020 (Chadbourn rev. 1970); *McCormick on Evidence,* § 47 (2d ed. 1972).

These cases, as well as those from Maryland cited earlier, are all factually distinguishable from the one at bar in that they deal with evidence which is not independently admissible because it is irrelevant. In the case here, the prior statement of the officer, that the victim had told him the shooting was accidental, is clearly relevant; it is inadmissible as independent testimony only because it is hearsay.

It becomes necessary, therefore, to examine the "double hearsay" statement in question. The ultimate fact is that the shooting was accidental, and this unquestionably is relevant, since it pertains to the most critical issue in the trial. The first level of hearsay is the victim's statement that the shooting was an accident. This statement, however, is surely relevant, since the underlying fact is relevant; but, it is inadmissible as substantive evidence — not being a dying declaration — because it violates the hearsay rule. The second level of hearsay is the statement made by Officer Brown to the proffered witness that the victim had said the shooting was accidental. This second statement is just as relevant as its underlying facts, since it too is directed at an essential element of the case. Thus, Officer Brown's statement is relevant to the main issues of the case, but it is inadmissible as substantive or independent evidence to

show that the shooting was accidental because it is hearsay, indeed, double hearsay.

Basic to a complete understanding of this case, however, is the purpose of the proffer. The police officer's statement was not offered to show its truth, but only to impeach his testimony by showing that he made such a statement which he now denies. For this purpose, the statement is not hearsay at all. It is incorrect to label a statement offered for impeachment purposes as an exception to the hearsay rule, negating the second level of hearsay, but not the first. Use of a statement for impeachment purposes is not hearsay, since only the fact that the statement was made is being offered, not the truth of the statement. *Smith v. Branscome*, 251 Md. 582, 590, 248 A. 2d 455 (1968); *Sun Cab Company, Inc. v. Cusick*, 209 Md. 354, 361-62, 121 A. 2d 188 (1956); *McCormick on Evidence, supra,* § 34.

We have found no case, nor have we been informed of any, which deals with the situation presented here, where the subject matter of the extrinsic evidence is inadmissible as independent evidence for a reason other than irrelevancy. All of the cases coming to our attention — defining what is meant by collateral — involve extrinsic evidence which is not independently admissible because it is irrelevant. In such circumstances, the test applied by the Court of Special Appeals is appropriate and the extrinsic evidence should not be admitted, since to do so would cause waste of time, inconvenience, unfair surprise and confusion of the issues. And, as we have noted, such issues do not become relevant merely because one seeks to contradict them, *Harris v. State, Kantor v. Ash, Consol. Beef Co. v. Witt & Co., Sloan v. Edwards*, all *supra.*

But where the inadmissibility of the extrinsic evidence, for a purpose independent of the contradiction, rests on grounds other than relevancy as, for example, in the present case, where it rests on the hearsay rule, different considerations govern. Rather than mechanistically apply a rule intended to serve another purpose, we must be mindful of the object of the rule in deciding the appropriate test to be applied.

162

Here, the subject matter of the impeachment is one upon which the police officer normally would not have been mistaken, since it is vitally connected with the main issue in the case — whether the shooting was accidental. Therefore, the fact that he denied making the statement is calculated to be a strong probative force in discrediting him. It cannot be dismissed as a minor point that would fail to carry great weight. Nor is it likely to result in a confusion of issues or unfair surprise, since the issue of accidental shooting is already in the case, and the police officer undoubtedly would be prepared on this issue.[1] Thus, by adverting to the fundamental principles underlying the rule excluding extrinsic impeachment on collateral matters, we conclude that the reasons for exclusion do not obtain in this case.

In sum, the test of collateralness — whether the fact as to which the error is predicated could have been independently shown in evidence — actually means whether that fact could have been shown in evidence from the standpoint of relevancy. It is only in the context of relevancy that the rule accomplishes its underlying objectives. The test, therefore, and we think it is foreshadowed by our earlier decisions, is whether the fact as to which the error is predicated is relevant independently of the contradiction; and not whether the evidence would be independently admissible in terms of satisfying all the rules of evidence. This conclusion is bolstered by the grouping of the word "collateral" with the words "irrelevant" and "immaterial" in those cases which have applied this rule. *Harris v. State, Howard v. State, Kantor v. Ash, City Pass. Ry. Co. v. Tanner, Sloan v. Edwards,* all *supra.*

By applying the word "collateral" in the sense in which we think it has been used in the cases and by the commentators, we conclude that the testimony of the proffered witness with regard to the statement allegedly made to him by the police officer should have been admitted for the sole purpose of

---

1. It is true that an additional issue is introduced, *viz.*, whether the police officer made the prior statement or not, but this issue will always develop when there is a prior inconsistent statement, and is therefore not a valid criterion, Wigmore on Evidence, *supra*, § 1019.

impeachment. For this purpose, it is not hearsay and, as we have observed, it is relevant. The auxiliary policy considerations incorporated into the rule against extrinsic impeachment on collateral matters do not weigh against it, since the matters here are relevant independently of the self-contradiction. Therefore, the trial court erred in excluding the proffered testimony.

Although holding that the ruling of the trial judge was correct, the Court of Special Appeals, by *dicta*, expressed the view that had there been error, it "would have been harmless beyond a reasonable doubt under *Chapman v. California*, 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967)." [2] From our perusal of the record, we conclude that the error committed here was prejudicial.

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to reverse the judgment of conviction and to remand the case to the Criminal Court of Baltimore for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

*Smith, J., dissenting:*

I respectfully dissent.

The alleged statement of the victim to the officer was not part of the *res gestae*. There was no attempt to show that the statement of the victim was a dying declaration. There is not even a suggestion that it was a dying declaration. The trial judge in his ruling on the proffer (in the portion omitted by the majority opinion) said:

"Although the condition of the deceased was then

---

2. We note that Chapman applies only to violations of federal constitutional rights, and that the issue here does not rise to that level. Hence, the Chapman doctrine would appear inapplicable. In Maryland, therefore, the test is whether the erroneous exclusion of evidence results in prejudice to the complaining party, Nixon v. State, 204 Md. 475, 105 A. 2d 243 (1954), Noel v. State, 202 Md. 247, 96 A. 2d 7 (1953).

critical, although he did die presumably several days later, the testimony of Officer Brown and of also Officer Brice indicates that the deceased at that time thought that he was going to live, not die, as shown by the threats to get the defendant after he left the hospital or after he recovered. The rule is stated in *Connor versus State*, 225 Maryland, 543, 551 states: 'Although it is not necessary for the victim to state that he expects to die, and it is enough if his condition is such as to warrant an inference of impending death, the rule also includes a provision that the victim must be aware that his physical condition is such that it would warrant an inference of impending death.' The evidence here shows that the victim had no such idea. He expected to live based upon the testimony which has been received."

All of this must be placed in the context that the testimony of Officer Brown on cross-examination which Smith seeks to contradict was relative to a conversation with the victim at the hospital approximately two days after the shooting. No reference whatever had been made on direct examination to a visit by the police to the victim at the hospital. On cross-examination Officer Brown was asked about the visit and then about any statements made to him or in his presence by the victim. Furthermore, the whole defense was accidental shooting. The proffered statement was double hearsay offered as a part of the case of the defense after the defendant had testified relative to her contentions that the shooting was accidental. It no doubt was an adroit attempt to undermine the testimony of Officer Brown that when he started to place Mrs. Smith under arrest at the scene of the crime "she broke away and kicked the victim in his wound," and his addition, when inquiry was made as to what part of the victim's body she kicked, "Directly in the wound." There was also testimony that at that time she shouted, "I didn't mean to shoot you, I meant to kill you."

It is said in Underhill, *Criminal Evidence* § 237 (6th ed. P.

Herrick, 1973) on the subject of "[i]mpeachment of adverse witness by means of his prior inconsistent statements":

> "A witness may be cross-examined, and also impeached or contradicted, as to any matter brought out on his direct examination, even though it is irrelevant or collateral. But as to matters brought out on cross-examination, any impeaching or contradictory statement must be relevant, competent, and admissible. The cross-examiner cannot, in other words, cross-examine upon collateral or irrelevant matters and then proceed to impeach the witness as to such collateral or irrelevant matters. If the prior statement is collateral or irrelevant and the witness denies making it, his answer is conclusive. The test whether the evidence offered in contradiction is admissible (that is, not collateral or irrelevant) is whether such evidence would be admissible for some purpose other than mere contradiction; or, in case of prior inconsistent statements, whether evidence of the facts stated would be so admissible." *Id.* at 720.

Similar observations are found in 2 Wharton, *Criminal Evidence* § 467 (13th ed. Torcia 1972); 2 Poe, *Pleading and Practice* §§ 277 and 280 (5th ed. Tiffany 1925); 58 Am. Jur. *Witnesses* §§ 782-790 (1948); and 98 C.J.S. *Witnesses* §§ 386, 580, 611 and 633 (1957). What is "competent" evidence is well summed up in 29 Am.Jur.2d *Evidence* § 257 (1967).

Illustrations of what I understand to be the proper application of this rule are found in *Attorney-General v. Hitchcock*, 1 Exch. 91, 99-100, 102, 106 (1847), to which Judge Moylan made reference for the Court of Special Appeals in *Smith v. State*, 20 Md. App. 254, 259-60, 315 A. 2d 76 (1974); *Cofer v. State*, 158 Miss. 493, 130 So. 511 (1930); *Williams v. State*, 73 Miss. 820, 19 So. 826 (1896); *Combs v. Winchester*, 39 N. H. 13 (1859); *State v. Tucker*, 58 N. D. 82, 224 N. W. 878 (1929); and *Hildeburn v. Curran*, 65 Pa. 59 (1870). I infer from these cases and the authorities that any evidence

which is not competent to be received as evidence in one's case in chief cannot be introduced for the purpose of impeachment because, by definition, evidence that could not be introduced in one's case in chief is "collateral" and a witness may not be impeached on a collateral matter.

I find what I understand to be the rule well summed up in W. Reynolds, *Trial Evidence* § 116 (1911):

> "[T]he best test of whether the denial of a fact on cross-examination may be contradicted is this: 'Would the cross-examining party be entitled to prove such fact as part of his case if it had not been alluded to in the cross-examination? ' Hence, when a witness denies, on cross-examination, any fact tending to show that he is not impartial, such fact may be proved by other testimony, notwithstanding his denial; for the other party would have had the right to give evidence of that fact without having interrogated the witness in regard to it at all."

The cross-examining party, Smith, would not have been able to prove by direct, substantive evidence as a part of her case either that the victim told the officer at the hospital some days after the event, not as a dying declaration, that the shooting was accidental, nor that the officer made such a statement to the investigator for the public defender's office. Therefore, I would affirm. The precedent set here today by our brethren of the majority opens the door for ingenious counsel by a clever question on cross-examination of a state's witness to suggest the whole defense and then to bolster that defense in the minds of the jury by evidence of no probative value. The majority's ruling thus leaves unrestricted the ingenuity of counsel's questions directed to the very heart of the defense and seriously undermines the rules of evidence.

I am authorized by Judge O'Donnell to say that he concurs in this opinion.