ROBERT CLARENCE BRYANT *v.* STATE
OF MARYLAND

[No. 371, September Term, 1967.]

*Decided July 24, 1968.*

574

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert A. Sapero* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty at a court trial in the Criminal Court of Baltimore of assault with intent to rob and sentenced to imprisonment for a term of 4 years.

## SPEEDY TRIAL

The appellant was arrested on 4 July 1967 and indicted and arraigned during that month. Counsel, appointed for him on 2 August, filed a motion for discovery which was answered by the State on 16 August. The answer gave the name of the prosecuting witness as Samuel J. Moore but the indictment charged the appellant with robbing Samuel J. Harris. Counsel brought this to the attention of the State and an indictment correctly stating the name of the victim was returned on 21 August. Counsel filed a motion for a speedy trial on the original indictment on 11 September. The appellant was arraigned on the new indictment on 13 September. He filed a motion for a speedy trial on the new indictment on 19 September. Trial commenced on 4 October and was concluded on 5 October. On 4 October, prior to trial, the appellant moved to dismiss the new indictment on the ground that he had been denied a speedy trial and the court denied the motion.[1] He contends the court erred in denying the motion. We do not agree.

---

1. The appellant also moved to dismiss the original indictment. The motion was granted "because there has been a superseding indictment filed."

> "A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances." *State v. Long and Nelson,* 1 Md. App. 326, 332, citing *Jones v. State,* 241 Md. 599, quoting, at 608, 22A C.J.S. *Criminal Law,* § 467(4).

One of the factors relevant to a consideration of the circumstances in determining whether a delay in trial assumes constitutional proportions is the length of the delay.[2] *Stevenson v. State,* 4 Md. App. 1, 11. An accused is protected only against unreasonable or unnecessary delay. He is not entitled to an immediate trial as the State is entitled to time to prepare for trial with reasonable diligence and also to any reasonably needed time to conform with the trial court's calendar of criminal cases in the actual trial of the cases. *Fabian v. State,* 3 Md. App. 270, 286. In the instant case, even assuming that the time from the arrest of the appellant to his trial was properly computed as chargeable to the State,[3] the period was only three months. We have no difficulty in finding that this was not a delay of constitutional proportion, that it was not capricious or purposeful and that, therefore, it was not unreasonable or unnecessary. Thus, there being no delay in the constitutional sense, the appellant was not denied a speedy trial and the lower court did not err in denying the motion to dismiss the indictment.

## THE SUFFICIENCY OF THE EVIDENCE

Officer John Hawthorne and Officer Francis Miller, both members of the Baltimore City Police Department, and Samuel J. Moore testified on behalf of the State. Hawthorne and Miller were on duty in a radio car on 4 July 1967, and about 2:15 A.M. were cruising in the 600 block of Pitcher Street. Hawthorne saw "two colored men standing over another male which

---

**2.** The other factors are the reason for the delay, prejudice to the accused and waiver by the accused. See *Hall v. State,* 3 Md. App. 680, 686.

**3.** But see *Montgomery v. State,* 4 Md. App. 473.

was on the ground, and the two colored males were beating him about the head and one fellow was kicking him". Miller, who was driving, stopped the car and the two men who had been beating the prone man ran. Hawthorne pursued them and after a chase of several blocks apprehended the appellant when he fell. The appellant was in sight of Hawthorne during the entire chase and was positively identified by the officer as one of the men participating in the assault. Hawthorne made a "pat-down search" for weapons and found none. He did not put his hands in his pockets or ask him to empty his pockets but "just felt his body to see if there were any hard objects that might be weapons". He did not see the appellant throw anything away during the chase. Miller "observed what appeared to be a fight or something going on on the pavement". He stopped the car and the men ran, pursued by Hawthorne. He characterized "what appeared to be a fight" as one man on the pavement and two men beating him. The identity of the man being beaten was later determined to be Samuel J. Moore. He had been drinking, his mouth was bleeding and "he had some bruises on him, contusions". On cross-examination Miller said that he asked the appellant "later on" if he had "taken anything" and the appellant denied "taking anything". He also said that Moore was intoxicated. Moore testified that on 4 July about 2:15 A.M. "I was walking down the street and was attacked from behind. I lost a watch, keys, and wallet * * * It was on Pennsylvania Avenue and Pitcher Street, walking down the street, and I was attacked from behind. That's all I remember". He had just come from a bar in the 800 block Pennsylvania Avenue and "hadn't gone too far" before he was attacked. He did not "remember exactly how" he was attacked. He thought two people were involved and although he recalled being knocked down he could recall nothing involving the attack thereafter. The transcript then reads:

"Q. All right Now, I believe you testified as to what was taken from you during this attack.
A. Watch, keys and wallet.
Q. Do you recall what the value of the watch was?
A. No, not offhand.

Q. What kind of watch was it, Mr. Moore? Was it a wristwatch or pocketwatch?

A. Wristwatch.

Q. Do you recall what the make of the wristwatch was?

A. No, I don't.

THE COURT: Do you remember what you paid for it?

A. It was a gift.

THE COURT: Pardon?

A. It was a gift.

THE COURT: It was a gift? All right.

BY MR. GRANT:

Q. And you testified also that—what else, other than the watch, was taken?

A. Watch, keys, and wallet.

Q. What kind of keys were they?

A. House keys.

Q. Do you recall how many there were?

A. Only one."

He could not identify either of his attackers and did not remember what happened after the officers arrived. He went to Provident Hospital and thought "I went on my own, I'm not sure". His only injury was a sore back. The only place the men hit him was on the lower part of his back. On cross-examination he said that he had been in the bar "about an hour or so" and had three bottles of beer. He "had a little bit of whiskey the early part of the day", but he was not drunk when he was attacked. He denied that he could have lost the wallet some other place saying, "No, I had the wallet at the same time they attacked me". He did not remember the make of the watch, but it was silver and round with a metal band. He said he had "it at the same time the attack came". The watch, wallet and keys "were taken at the same time I was attacked because I remember having them on". The court asked him, "Were they taken from you by the people who attacked you or not?" and he replied, "Yes". The defense did not offer evidence.

The appellant was convicted of assaulting Moore with the intent to rob him. This crime is an aggravated assault requir-

ing a specified intention in addition to the intentional doing of the *actus reus* itself—an intent specifically required for guilt of the particular offense, in this instance an intent to rob. So the State had to prove: (1) an assault on Moore; (2) made by the appellant; (3) with the intent to rob. It was clear from the testimony of the police officers that an assault was made on Moore and that the appellant was one of two men making it. The question is whether the evidence was sufficient to prove that the assault so made by the appellant was with an intent to rob. There is no presumption of law, either conclusive or disputable, that an act was done with any specific intent unless a statute so provides and there is no such statutory presumption in Maryland with regard to assault with intent to rob. But the intent with which a harmful act is done is usually not expressed in words, and the trier of facts is permitted to draw such inferences of intent as are warranted under all the circumstances of a particular case. See Perkins, *Criminal Law* (1957) Ch. 7, § 3, p.674. We feel that the circumstances here warranted the trial court in drawing the inference that the appellant intended to rob Moore when he assaulted him. Moore testified that he had the wallet, watch and key at the time of the assault. There was no evidence of an argument or altercation before the assault, that there was ill-will between the victim and his assailants or in fact that he even knew them, or that the assault was provoked by other than an intent to rob. That Moore was unable to give the make of the watch or its value and that only one key was taken and that he may have been intoxicated went only to the weight of his testimony, a matter for the consideration of the trial court. See *Hutchinson v. State,* 1 Md. App. 362. The appellant urges that the trial court stated that the testimony relied on by it in reaching a verdict was only that of the police officers. Therefore the testimony of Moore can not be considered nor can any inference be drawn from it, and as the testimony of the police officers was not sufficient to prove an intent to rob, the evidence did not support the verdict. At the close of all the evidence, defense counsel in argument claimed that there was a variance between the testimony of the officers and Moore. He pointed out that "The officers testified that there were facial abrasions, bruises and blood from the mouth. The

man testified that he was beaten in the back and the back alone." The statement of the trial court, made in arriving at its verdict and relied upon by the appellant for his allegation that the court did not consider the testimony of Moore, was: "The testimony of the victim, due to the condition of the victim, is not pertinent." We do not take this statement to mean that the court did not consider any of the testimony of Moore or that it was unworthy of belief. Immediately before the statement the court said: "The testimony of the officers is that one of them (the assailants) kicked him." The statement of the court must be considered within its frame of reference and not out of context. We think it obvious that the statement was made only in answer to defense argument as to the alleged variance between the nature of the assault as described by the officers and as described by the victim and not that the court found the victim's entire testimony incredible. The court found the testimony of all the witnesses "quite clear in all the material aspects." We find that there was evidence and rational inferences properly drawable therefrom sufficient for the trial court to find the appellant guilty beyond a reasonable doubt. Therefore the judgment of the trial court on the evidence was not clearly erroneous and we may not set it aside. Md. Rule, 1086.

The appellant also contends that "if the specific intent was present, then the facts indicate that a robbery was consummated, and not an assault with intent to rob." He claims that "if a robbery was committed, the verdict was improper and cannot stand." Under the doctrine of merger followed by this Court, on proper factual circumstances in a particular case, assault with intent to rob may merge into robbery. *Price v. State,* 3 Md. App. 155; *Tender v. State,* 2 Md. App. 692. But the doctrine is applicable only when there have been convictions on each offense. It has no application where there is one trial on multiple charges, except to preclude multiple convictions on merged offenses. *Gee v. State,* 2 Md. App. 61. Since the appellant was not convicted of robbery, there was no merger into it of the assault with intent to rob. Under these circumstances the acquittal on the greater offense did not preclude conviction on the lesser. The verdict was not improper.

## IMPEACHMENT OF THE PROSECUTING WITNESS

On cross-examination of Moore defense counsel asked: "Mr. Moore, do you remember your whereabouts yesterday?" The State objected on the ground of relevancy. Counsel urged that the question was posed to impeach the witness. The objection was sustained. The court said that objection to a further question as to whether Moore remembered being in court the preceding day would be sustained "unless you can show me that it is material or relevant in some fashion". Counsel said, "I am trying to ascertain if the man can recall properly some things that happened. I think this goes to, as far as credibility for impeachment purposes. If the man doesn't remember where he was yesterday, I think this is surely significant." The objection was sustained, the court remarking that "we are not concerned with anything that happened yesterday. We are concerned with something that happened on the 4th of July." The appellant contends that the trial court erred in sustaining the objection.

The appellant claims the questions disallowed were proper to test the credibility of the witness. The general rule is that a witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or cause, his bias or the like.[4] *Howard v. State,* 234 Md. 410; 415; *Kantor v. Ash,* 215 Md. 285, 290. But the allowance or disallowance of certain questions on cross-examination is normally left to the sound discretion of the trial judge, *Holt v. State,* 3 Md. App. 544, and it is when there is an abuse of this discretion to the prejudice of the accused that we must reverse. *Shupe v. State,* 238 Md. 307, 310-311. Even if the ability or inability of the witness here to recall his whereabouts as posed by the questions could be said to be a test of his memory or to encompass mat-

---

4. This is an adjunct to the basic rule relating to the scope of cross-examination stated in *Williams v. Graff,* 194 Md. 516 and quoted in *Shupe v. State,* 238 Md. 307, 311 as applicable in Maryland. The questions were clearly not encompassed within the basic rule.

ters relevant and material and not collateral to his testimony with regard to his credibility, we find no abuse of discretion by the trial judge in their disallowance so as to require reversal of the judgment.

*Judgment affirmed.*