468 A.2d 319

**STATE of Maryland**

v.

**Thomas Wayne COX.**

**No. 59, Sept. Term, 1982.**

Court of Appeals of Maryland.

Dec. 22, 1983.

Diane G. Goldsmith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellant.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COLE, Judge.

The gory details of this crime need not be recounted with specificity. Suffice it to say that the facts clearly show that the prosecutrix was brutally beaten about her face and body, raped, sodomized and forced to perform fellatio at night on the ground in an outdoor area near her home. She identified Thomas Wayne Cox as her assailant to her mother and

the police immediately after the attack as someone whom she knew from the neighborhood who gave as his excuse for his assault that he had just gotten out of jail and "had not had a woman in six months."

Cox was arrested the same night in a house on the property where the criminal acts took place. His clothing was dirty and dusty, with grass stains on the elbows of his jacket and the knees of his pants; he also had several "newly made" abrasions or scratches on his arm. He had been released from the Maryland Correctional Institute in Hagerstown that same day.

At his trial before a jury in the Circuit Court for Baltimore County, Cox did not dispute the fact that the victim had been physically and sexually abused. He did, however, maintain that he was not her assailant. To this end he produced alibi witnesses to generate a reasonable doubt that he was the criminal agent. These witnesses placed him in the general vicinity of the scene of the crime before, during, and after its commission but attempted to show his whereabouts and activities at the specific time of the crime so as to prove it impossible for Cox to have assaulted and brutalized the victim.

The matter reaches us because of the following colloquy which transpired at trial when the prosecutrix was being cross-examined by defense counsel:

Q Do you know a Donald Vrhovac?

A Donald Vrhovac, yes, I do.

Q How do you know him?

A Because I used to go with him.

Q You used to date him, right?

A Yes, sir.

\* \* \* \* \* \*

Q Did you ever make an allegation, a criminal charge against a Mr. Vrhovac claiming an assault on you?

The State's objection to this question was sustained, and at the ensuing bench conference, the following colloquy occurred:

[DEFENSE COUNSEL]: I think I should proffer in this fashion, I have information that the witness made a criminal charge against this Vrhovac of assault on her. And then subsequent, during the course of the trial admitted that she did not tell the truth, that it was not an assault on her. And that he was, as a result of her recanting her statement, found not guilty.

MR. LEVITZ: How is that relevant to this trial?

MR. KAHN: Credibility.

THE COURT: If you have a whole lot of them, but just one isolated instance.

MR. KAHN: Testimony, false testimony that was recanted.

MR. LEVITZ: From what you have indicated she told the truth in court.

MR. KAHN: No. She first came into court and said that he did commit the assault, and then on cross-examination the information I have is that she then recanted it.

MR. LEVITZ: Judge, this is—

THE COURT: I think it's an independent matter. And if it were more than one, but one isolated instance I don't think it's relevant to this, so I will sustain the objection.

Cox was convicted and sentenced to prison for life. He appealed to the Court of Special Appeals which reversed his convictions, *Cox v. State,* 51 Md.App. 271, 443 A.2d 607 (1982), holding that it was error for the trial court to have limited defense counsel's cross-examination. We granted certiorari and shall affirm the judgment of the Court of Special Appeals.

It is clear that defense counsel was attempting to impeach the testimony of the prosecutrix for it was her identification of the defendant that was the sole piece of direct evidence linking him to the crime. He sought to establish that she was lying by showing she had on a prior occasion under oath charged another with criminal assault and recanted that charge under cross-examination. The trial court denied him

the opportunity to pursue this course and he maintains this ruling was reversible error.

We begin our discussion by noting that the trial of any case is a search for the truth. The strength of each side of an issue rests upon the believability of the evidence offered as proof. This evidence unfolds, in large measure, as testimony of the witnesses is produced at trial. The tool available to each side to test the believability of the testimony is cross-examination.

 This Court has recognized as a general rule that a witness may be cross-examined "on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or cause, his bias, or the like." *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661 (1958). The exception to this rule is that cross-examination will not be permitted on matters that are immaterial or irrelevant to the issue being tried. *See id.; Harris v. State,* 237 Md. 299, 302, 206 A.2d 254 (1965). In this regard, the trial judge plays a significant role; for he must balance the probative value of an inquiry against the unfair prejudice that might inure to the witness. Otherwise, the inquiry can reduce itself to a discussion of collateral matters which will obscure the issue and lead to the fact finder's confusion.

To assist the trial judge, our courts have recognized and enforced certain principles. We have permitted extrinsic evidence of a prior conviction of a character witness or the defendant himself to be introduced to question the veracity and credibility of the witness or the defendant. *See Taylor v. State,* 278 Md. 150, 152, 360 A.2d 430 (1976) (citing *Taylor v. State,* 226 Md. 561, 565–66, 174 A.2d 573 (1961); *Linkins v. State,* 202 Md. 212, 220–21, 96 A.2d 246 (1953)).[1] However,

---

1. Section 10–905 of the Courts and Judicial Proceedings Article, Md.Code (1974, 1980 Repl.Vol.), provides:

(a) *In general.*—Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime. Evidence of conviction is not admissible if an appeal is pending, or the time for an appeal has not expired, or the

we have insisted that the prior conviction should be relevant to the inquiry. We have indicated that "infamous crimes, felonies, crimes involving moral turpitude, deceit, or dishonesty are . . . admissible for purposes of impeachment. . . ." *Ricketts v. State,* 291 Md. 701, 708, 436 A.2d 906 (1981); *see also Linkins v. State,* 202 Md. 212, 96 A.2d 246 (1953); *Hunter v. State,* 193 Md. 596, 69 A.2d 505 (1949); *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931). But generally, we have reposed the responsibility for determining the relevance of prior convictions used for impeachment in the discretion of the trial judge.

■ We have also permitted a witness to be cross-examined about prior bad acts which are relevant to an assessment of the witness' credibility. *See Mahan v. State,* 172 Md. 373, 191 A. 575 (1937); *Sappington v. Fairfax,* 135. Md. 186, 108 A. 575 (1919). We have allowed such inquiry to be conducted when the trial judge is satisfied that there is a reasonable basis for the question, that the primary purpose of the inquiry is not to harass or embarrass the witness, and that there is little likelihood of obscuring the issue on trial. We recognize that in cases regarding prior misconduct, the cross-examiner is bound by the witness' answer and, upon the witness' denial, may not introduce extrinsic evidence to contradict the witness or prove the discrediting act. The witness is not disadvantaged because there is nothing for him to rebut. Thus, the inquiry virtually stops with the question and answer, except to the extent that the trial judge may allow further cross-examination to refresh the witness' recollection.

■ We have also been steadfast in holding that mere accusations of crime or misconduct may not be used to impeach. *See Martens Chevrolet v. Seney,* 292 Md. 328, 439

---

conviction has been reversed, and there has been no retrial or reconviction.

(b) *Certificate under seal as evidence.*—The certificate, under the seal of the clerk of the court, of the court in which the conviction occurred is sufficient evidence of the conviction.

A.2d 534 (1982); *Burgess v. State, supra; Nelson v. Seiler,*
154 Md. 63, 139 A. 564 (1927). The rationale for this
viewpoint is obvious. First of all, accusations of misconduct
are still clothed with the presumption of innocence and
receiving mere accusations for this purpose would be tanta-
mount to accepting someone else's assertion of the witness'
guilt and pure hearsay. 3A J. Wigmore, *Evidence* § 980a
(Chadbourn rev. 1970).

■ In the instant case, defense counsel was not inquiring
into prior convictions or an accusation of misconduct but
seeking to determine the fact of prior misconduct. Under
such circumstances, it is the responsibility of the trial judge
to determine the relevance and materiality of the alleged
prior misconduct, for it is purely collateral to the issue on
trial and should only be admitted if probative of a lack of
credibility. The trial judge must constantly be alert to
make certain that the probative value of the inquiry out-
weighs its potential prejudice to the witness and that the
inquiry does not stem primarily from a desire to harass or
embarrass the witness.

■ In this connection, the problem becomes more acute
when it is the defendant on the witness stand. *See United
States v. Schiller,* 187 F.2d 572, 576 (2nd Cir.1951) (Frank,
C.J., concurring) (noting that "impeachment should be limit-
ed more strictly in favor of the accused than in the case of
an ordinary witness"). The trial judge must carefully scru-
tinize the potential prejudice to the defendant lest the jury
conclude that the defendant should be convicted because of
his history of bad or immoral conduct. *See generally Rick-
etts v. State, supra; Ross v. State,* 276 Md. 664, 350 A.2d 680
(1976); *MacEwen v. State,* 194 Md. 492, 71 A.2d 464 (1950);
Comment, *Other Crimes Evidence at Trial: Of Balancing
and Other Matters,* 70 Yale L.J. 763 (1961).

In the instant case we are not concerned with the
impeachment of a defendant or a character witness. The
issue we must resolve is rather straightforward: to what
extent may the testimony of a prosecuting witness in a rape

case be impeached on cross-examination? We have already stated the general rule that any witness may be cross-examined on matters and facts affecting his credibility, so long as such facts are not immaterial or irrelevant to the issue being tried.

■ The State argues that the inquiry sought by defense counsel is not probative of the witness' credibility because the misconduct is in the nature of a mere accusation. It cites several cases to buttress its contention. For instance, the State relies on *Martens Chevrolet v. Seney,* 292 Md. 328, 439 A.2d 534 (1982). In *Martens* we held that the trial court erred in permitting defense counsel to cross-examine one of the plaintiff's witnesses regarding whether he had been "charged with deceit by the Chrysler Company." *Id.* at 339, 439 A.2d 534. We pointed out that this was a mere accusation of misconduct, having little probative value. It is clear then that an accusation (even if an arrest or indictment) is based on hearsay—an out-of-court assertion of the witness' guilt by someone the witness has no opportunity to question. And we emphasize that when impeachment is the aim, the relevant inquiry is not whether the witness has been accused of misconduct by some other person, but whether the witness actually committed the prior bad act. A hearsay accusation of guilt has little logical relevance to the witness' credibility. *Accord State v. Alford,* 289 N.C. 372, 222 S.E.2d 222 (1976), *vacated in part on other grounds, Carter v. North Carolina,* 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed.2d 69 (1976); *Duncan v. State,* 260 Ark. 491, 541 S.W.2d 926 (1976) citing *Moore v. State,* 256 Ark. 385, 507 S.W.2d 711 (1974). Therefore, *Martens* and other cases of this genre, *see, e.g., Duffy v. State,* 151 Md. 456, 135 A. 189 (1926), prohibit cross-examination that does not promise to elicit information probative of the witness' credibility. As such, they are thoroughly distinguishable.

One other case cited by the State is instructive because it involves two improper inquiries on cross-examination that indicate the ways in which facially similar cases are distin-

guishable from the case at bar. In *Rau v. State,* 133 Md.
613, 105 A. 867 (1919), the defendant attempted to attack the
prosecutrix's credibility by cross-examining her and her fa-
ther. The trial court sustained the State's objection to the
following question on cross-examination of the prosecutrix:

> "Q. Didn't you about a year ago tell your mother that
> a man by the name of Horton who was your neighbor, had
> put his person in your person." [*Id.* at 614, 105 A. 867.]

This question obviously did not relate to the witness' credi-
bility. Thus, the Court held that this question was improper
because it did not tend to impeach her general character for
truth and veracity. The trial court also properly sustained
the State's objection to the following question asked of the
prosecutrix's father:

> "Q. You have been sworn before; I want to ask you,
> Mr. Lohmeyer, if your daughter Martha, the prosecutrix
> in this case, didn't tell you that a man by the name of
> Hutton, a neighbor across the road where you lived about
> a year ago, that about that time that this Mr. Hutton had
> sexual intercourse with her, and if she didn't thereafter
> tell you that it was not so and that she had told a lie on
> Hutton (Horton)?" [*Id.* at 616, 105 A. 867.]

This question reached a specific act of untruth relevant to
the prosecutrix's credibility; however, the inquiry was made
during the examination of another witness, not on cross-ex-
amination of the one charged with the untruth. The Court
alluded to the significance of asking this question of the
prosecutrix rather than her father:

> It will be seen that the prosecuting witness was not asked
> on cross-examination whether she had told a lie concern-
> ing the alleged intercourse with Hutton or Horton, but
> whether or not she had told her mother a year ago that a
> man by the name of Horton, a neighbor of hers, had
> sexual intercourse with her. [*Id.* at 617, 105 A. 867.]

As this passage suggests, the facts in *Rau* disclosed a ques-
tion that may have been proper for cross-examination of the
witness. However, counsel failed to cross-examine the wit-

ness specifically about an act reflecting on her credibility and erred in attempting to broach the subject through extrinsic testimony.

■ As we see it, the case *sub judice* is clearly distinguishable from these cases. Defense counsel's inquiry focused on the fact of prior misconduct when the witness had actually lied under oath in a similar situation. Counsel's proffer indicated a proper line of cross-examination since the information to be extracted from the witness would relate to her character for veracity and thereby allow the fact finder to assess her credibility. Of course, if the witness denied the prior misconduct, the examiner would be bound by her answer, in that, he could not introduce extrinsic evidence to prove the discrediting acts. *See Smith v. State,* 273 Md. 152, 328 A.2d 274 (1974); *Howard v. State,* 234 Md. 410, 199 A.2d 611 (1964).

■ While the right to cross-examine is not absolute and may be restricted by the trial judge, such restriction should be manifested by the exercise of sound discretion. As Chief Judge Murphy (then Chief Judge of the Court of Special Appeals) said in *DeLilly v. State,* 11 Md.App. 676, 681, 276 A.2d 417 (1971):

> We are, of course, mindful of the general rule so frequently cited that the allowance or disallowance of questions on cross-examination is normally left to the sound discretion of the trial judge. But where the limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable. *Shupe v. State,* 238 Md. 307 [208 A.2d 590]. The real object of cross-examination is "to elicit all the facts of any observation or transaction which has not been fully explained." *Williams v. Graff,* 194 Md. 516 [71 A.2d 450], and cases cited at p. 523 [71 A.2d 450]. That a witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge or the like, is a fundamental concept in our system of jurispru-

dence. *Kantor v. Ash,* 215 Md. 285 [137 A.2d 661]; *Bryant v. State,* 4 Md.App. 572 [244 A.2d 446]. And cross-examination to impeach, diminish, or impair the credit of a witness is not confined to matters brought out on direct examination; it may include collateral matters not embraced in the direct examination to test credibility and veracity, it being proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character, or credibility. 3 Wharton's Criminal Evidence, Sections 870, 871; 58 Am.Jur. *Witnesses* Section 625. Of course, the right to cross-examine effectively necessarily includes the right to place the testimony of a witness in its proper setting to fairly enable the jury to judge its credibility. *Smith v. Illinois,* 390 U.S. 129 [88 S.Ct. 748, 19 L.Ed.2d 956]; *Alford v. United States,* 282 U.S. 687 [51 S.Ct. 218, 75 L.Ed. 624]; *Plank v. Summers,* 205 Md. 598 [109 A.2d 914].

Here the inquiry had substantial probative force and there was no indication that defense counsel was harassing the witness by asking an unfounded question or seeking primarily to embarrass the witness. Indeed, the proffered question would have gone to the very heart of the witness' credibility. The evidence of the crime was extremely damaging and Cox's defense necessarily rested on the fact finder not believing the prosecutrix's statement that he was her assailant. The trial judge in denying defense counsel the opportunity to cross-examine as proffered abused his discretion (assuming that he exercised it in the first instance).[2]

Finally, the State argues that any error presented by this ruling was harmless beyond a reasonable doubt. We disagree. In *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976), the Court noted that in order to find that an error is harmless we must "be satisfied that there is no reasonable

---

**2.** The trial judge mistakenly believed that to impeach the witness counsel would have to proffer multiple acts of misconduct by the witness.

possibility that the evidence complained of—whether errone-
ously admitted or excluded—may have contributed to the
rendition of the guilty verdict." Although the jury had
ample evidence to convict Cox, we cannot say beyond a
reasonable doubt that the court's error could not have influ-
enced the jury. Despite some corroborating physical evi-
dence, the prosecution's case against Cox was based on the
testimony of the victim. If she were shown to be unworthy
of belief, the jury might well have been unable to conclude
that Cox was guilty beyond a reasonable doubt. The prof-
fered cross-examination, if successful, could have cast suffi-
cient doubt on the prosecuting witness' credibility to render
her unworthy of belief in the mind of at least one juror.
Therefore, the error in this case was harmful, and Cox's
conviction must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED. BALTIMORE COUNTY TO PAY THE
COSTS.

MURPHY, C.J., concurs in the result.