29 A.3d 286

**Robert Lee THOMAS**

v.

**STATE of Maryland.**

**No. 88, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 22, 2011.

Brian M. Saccenti, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland; Todd W. Hesel, Honors Atty., Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

BARBERA, J.

Petitioner, Robert Lee Thomas, was convicted by a jury in the Circuit Court for Prince George's County, Maryland, of carrying a handgun.[1] Petitioner appealed his conviction and

---

1. Petitioner's first trial ended in a mistrial, the reasons for which are not raised in this appeal. Petitioner's second trial ended with his conviction, from which this appeal is taken.

asked the Court of Special Appeals to determine whether the trial court erred in not allowing him to impeach a State's witness's testimony with evidence of either the witness's prior conviction or the conduct underlying that conviction. The Court of Special Appeals affirmed the judgment of conviction, concluding that the trial court did not abuse its discretion in disallowing either form of impeachment evidence.

We granted Petitioner's request for further review of the trial court's evidentiary ruling and now reverse the judgment of the intermediate appellate court. For reasons we shall explain, we hold that the trial court (1) did not err or abuse its discretion in refusing to allow Petitioner to make impeachment use of the witness's prior conviction, but (2) committed reversible error in denying Petitioner's request to use make impeachment use of the conduct underlying the prior conviction. Therefore, Petitioner is entitled to a new trial.

## I.

The State's lead witness at Petitioner's trial was Timika Williams. Before trial, the State moved in limine to prohibit Petitioner from impeaching Ms. Williams's testimony by asking her about a March 2007 conviction of theft of a motor vehicle. The conviction resulted from Ms. William's pleading guilty in the Circuit Court for Prince George's County. According to the State, Ms. Williams's guilty plea was unconstitutional, because she was not represented by counsel when she entered her plea and had not waived her Sixth Amendment right to counsel. Counsel for Petitioner objected to the State's motion but did not challenge the State's characterization of Ms. Williams's plea as being unconstitutional.

The trial court granted the State's motion over Petitioner's objection, prohibiting Petitioner from impeaching Ms. Williams by asking about the prior conviction or the conduct underlying it. The trial court explained its reasoning:

> I'm going to put on record exactly why I ruled the way I did in the State's motion in limine. I just want to make sure it's clear for the appellate record.

I find and I'll take judicial notice that the proceedings that take place in front of [the judge who accepted Ms. Williams's guilty plea] are absolutely unconstitutional. He does such things as ask people certain things, tell them to nod their head, and then he just takes pleas and just does it. There is no state's attorney present. There is no defense attorney present. There is no semblance of any type of due process or any rights given to the defendants. It is so widespread that even the federal judges in Greenbelt won't recognize that as convictions.

Now, I understand [Petitioner's] argument, and I am not taking anything away from it. I just wanted to make sure that the record indicated why I was ruling, not that I was saying that [Petitioner] couldn't use a conviction against the witness. It's this conviction. It's unique only to what happened in that courtroom. I have long lamented what happens there. I just wanted that on the record.

Petitioner later asked the court to reconsider its evidentiary ruling. The Court denied the request.

Ms. Williams testified that she and Petitioner at one time had an "intimate relationship." She recounted that, during the early morning hours of May 17, 2007, she was in her home in Oxon Hill, Maryland. Also in the home were Ms. Williams's niece and nephew, and her friend, Kenneth Foster. At approximately 4:30 a.m., someone began ringing the doorbell and banging on the door. Ms. Williams opened the door and saw Petitioner standing on the porch. Petitioner began asking Ms. Williams why she had not called him the night before and whether anyone else was inside the house. Ms. Williams responded that Mr. Foster was in her house, but "he wasn't there for [her]." She replied "no," to Petitioner's demands that Foster come outside. Petitioner then walked back to the street and got in the passenger seat of a pickup truck. The truck began to drive away, but then backed up and stopped in front of Ms. Williams's house.

Ms. Williams testified that Petitioner stepped out of the truck, and, while carrying a black bag in his hand, walked

toward her. As Petitioner approached Ms. Williams, he reached into the bag. Ms. Williams "grabbed his hands" and, as she did so, she felt "something in his hand in the bag"; that "something" was "just big and it was hard...." Petitioner "pulled away" from Ms. Williams, who then ran into the house and locked the door. She then heard banging on the door and went upstairs, where she found Mr. Foster on the telephone, speaking with the police. Ms. Williams went back downstairs to be with her niece and nephew. She looked out the peep hole in the door and saw Petitioner sitting on the porch.

Police Officers Jermaine Allen and Kevin Brooks responded to the call for assistance at the Williams residence. Officer Allen arrived at the residence, and, after speaking with Ms. Williams, searched the bushes two or three feet from the porch steps. There he found a black bag. Inside the bag, Officer Allen found a revolver and several rounds of ammunition. Meanwhile, Officer Brooks stopped a pickup truck approximately two blocks from Ms. Williams's residence. Officer Brooks found Petitioner in the passenger seat and took him into custody.

Petitioner testified at trial and provided a different version of events on the night in question. He testified that he had gone to Ms. Williams's house to have her re-twist his hair (Ms. Williams is a hairdresser). According to Petitioner, when he arrived at the house, Ms. Williams tried to give him a bag but he declined to take it.

The jury found Petitioner guilty of carrying a handgun. At a subsequent hearing, following a pre-sentence investigation, the court imposed a sentence of three years' imprisonment.

On appeal to the Court of Special Appeals, Petitioner challenged the trial court's ruling regarding impeachment of Ms. Williams's testimony. The court affirmed the judgment of conviction in an unreported opinion. The court held that the trial court did not abuse its discretion in prohibiting Petitioner from asking Ms. Williams about either her prior conviction or the conduct underlying that conviction.

Petitioner then sought review in this Court, and we granted certiorari to answer the following question:

> Did the trial court err in refusing to allow defense counsel to impeach the State's "star witness" with a prior theft conviction or the underlying conduct because the conviction was based on a guilty plea where the witness was not represented by counsel and had not waived her right to counsel?

## II.

 The question Petitioner presents implicates two rules of evidence relating to witness impeachment: Md. Rule 5–609(a)[2] (impeachment by prior conviction), and Md. Rule 5–608(b)[3] (impeachment by prior conduct). We will overturn a trial court's ruling on such matters only if the court " 'exercise[d] discretion in an arbitrary or capricious manner or . . . act[ed] beyond the letter or reason of the law.' " *King v. State,* 407 Md. 682, 696, 967 A.2d 790, 798 (2009) (quoting *Kelly v. State,* 392 Md. 511, 531, 898 A.2d 419, 430 (2006)) (addressing Md. Rule 5–609(a)).

---

2. Md. Rule 5–609(a) provides:

 (a) **Generally.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

3. Md. Rule 5–608(b) provides:

 (b) **Impeachment by examination regarding witness's own prior conduct not resulting in convictions.** The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred. The conduct may not be proved by extrinsic evidence.

## III.

Petitioner asserts that the trial court erred by not allowing the defense to use Ms. Williams's prior conviction for motor vehicle theft to impeach her testimony at trial. Petitioner points out that the language of Md. Rule 5–609(b), which allows the use of a prior conviction to impeach a witness, "does not contain an exception for convictions obtained in violation of the right to counsel. . . ." Petitioner further argues that use of such a constitutionally defective conviction for impeachment purposes does not run afoul of due process. Indeed, Petitioner contends that the "trial judge's erroneous decision to prevent defense counsel from impeaching Ms. Williams, the State's key witness, with her prior conviction violated Mr. Thomas's federal and state constitutional rights to due process of law and to confront the witnesses against him, as well as Rule 5–609."

The State disagrees, arguing that the trial court correctly concluded that the prior conviction could not be used for impeachment purposes because it was obtained without the benefit of counsel, in a process the trial court described as "absolutely unconstitutional" and a "kangaroo court." The State suggests that, "[w]hen the State demonstrated, and the defendant accepted, the constitutional invalidity of Williams's conviction, it was as if the conviction did not exist, nunc pro tunc, and therefore the trial court did not abuse its discretion" in refusing to allow Petitioner to impeach Williams with that "functionally nonexistent conviction."

Maryland Rule 5–609(a) allows the use of a prior conviction to impeach a witness if "(1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party." Subsection (b) of the Rule instructs that "evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction." Motor vehicle theft, the crime to which Ms. Williams pleaded guilty, is an "infa-

mous crime or other crime relevant to the witness's credibility," for purposes of the Rule. *See Beales v. State*, 329 Md. 263, 270, 619 A.2d 105, 108 (1993) (explaining that, because theft "is the embodiment of deceitfulness," it is an "infamous crime" for purposes of impeaching a witness). The conviction, moreover, occurred in March 2007, well within the 15–year limit. The only remaining inquiry under Md. Rule 5–609(a), then, would be whether the probative value of the conviction outweighs the risk of unfair prejudice to Ms. Williams or the State.

■ The conviction at issue in the present case, however, does not call for that analysis, because the conviction is the product of a constitutionally infirm guilty plea. Our caselaw, derived from Supreme Court precedent, makes clear that such convictions cannot be used for impeachment purposes. In *von Lusch v. State*, 279 Md. 255, 258–59, 368 A.2d 468, 470 (1977), we cited *Loper v. Beto*, 405 U.S. 473, 483, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) as "directly govern[ing]" the issue. In *Loper*, the Supreme Court explained that the "rule against use of uncounseled convictions 'to prove guilt' was intended to prohibit their use 'to impeach credibility'," because "[t]he absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt." 405 U.S. at 483, 92 S.Ct. 1014 (quoting *Gilday v. Scafati*, 428 F.2d 1027, 1029 (1st Cir.1970)).[4] That reasoning applies equally whether the prior conviction is that of the defendant or of a third-party witness.

■ In this case, it is undisputed that Ms. Williams's prior conviction was achieved without counsel or a waiver of counsel and is therefore unreliable, under *Loper*, for purposes of attacking Ms. Williams's credibility. We hold that the trial court neither erred nor abused its discretion in refusing to

---

4. This holding in *Loper* is the product of the four-Justice plurality, joined by Justice Byron White, who in his concurring opinion agreed with the plurality that constitutionally invalid convictions cannot be the basis for witness impeachment. *Loper*, 405 U.S. 473, 485, 92 S.Ct. 1014 (White, J., concurring).

allow Petitioner to impeach Ms. Williams with evidence of that conviction.

## IV.

Petitioner next argues that the trial court erred in prohibiting him from questioning Ms. Williams, pursuant to Md. Rule 5–608(b), about the conduct underlying the same conviction. Rule 5–608(b) addresses "Impeachment by examination regarding witness's own prior conduct not resulting in convictions." Under the Rule, the questioner must (1) show that the witness's prior conduct sheds light on the witness's personal credibility, and (2) if the opposing party objects, establish "a reasonable factual basis for asserting that the conduct of the witness occurred." Md. Rule 5–608(b). Additionally, "[t]he conduct may not be proved by extrinsic evidence." *Id.*

Petitioner sought to question Ms. Williams about the conduct underlying her conviction for motor vehicle theft. As noted above, a theft conviction is relevant to a witness's credibility under Rule 5–609(a). *Beales,* 329 Md. at 270, 619 A.2d at 108. If a conviction of a crime is "relevant to the witness's credibility" under Rule 5–609(a), then the conduct underlying the conviction is likewise "probative of a character trait of untruthfulness" for purposes of Rule 5–608(b). Accordingly, the act of theft satisfies the first prong of Rule 5–608(b). Because the State objected to Petitioner's proposed use of the conduct underlying Ms. Williams's 2007 motor vehicle theft conviction, Petitioner was obligated, under the Rule, to establish a "reasonable factual basis" for asserting that she committed the conduct underlying that conviction.

According to Petitioner, the facts "[t]hat [Williams] was both formally charged with car theft and that she admitted guilt in a court proceeding . . . established the reasonable factual basis required by Rule 5–608(b)." The State responds that, because the prior conviction resulted from an invalid guilty plea, Petitioner's supposed "factual basis" showing that the theft occurred is really nothing more than an accusation and therefore does not establish the requisite "reasonable

factual basis" for Petitioner's assertion that Ms. Williams actually committed the theft.

█ In *State v. Cox,* 298 Md. 173, 468 A.2d 319 (1983), we addressed the common law rule regarding the use of prior bad acts to impeach a witness. The common law rule was later codified as Md. Rule 5–608(b). *Pantazes v. State,* 376 Md. 661, 683, 831 A.2d 432, 445 (2003). In *Cox,* the defendant, charged with sexual assault, attempted to impeach the victim's testimony accusing him of the crime by questioning the victim about a prior criminal trial in which, allegedly, the victim falsely accused the defendant in that case of assault, but later recanted her charge under cross-examination. The trial court allowed the use of the witness's alleged false testimony. We affirmed the trial court's ruling. In analyzing the issue, we had this to say about the common law rule:

> We have also permitted a witness to be cross-examined about prior bad acts which are relevant to an assessment of the witness' credibility. We have allowed such inquiry to be conducted when the trial judge is satisfied that there is a reasonable basis for the question, that the primary purpose of the inquiry is not to harass or embarrass the witness, and that there is little likelihood of obscuring the issue on trial....

> We have also been steadfast in holding that mere accusations of crime or misconduct may not be used to impeach. The rationale for this viewpoint is obvious.... [A]ccusations of misconduct are still clothed with the presumption of innocence and receiving mere accusations for this purpose would be tantamount to accepting someone else's assertion of the witness' guilt and pure hearsay.

*Cox,* 298 Md. at 179–80, 468 A.2d at 321–22 (citations omitted); *see also* 1 BROUN, ET AL., MCCORMICK ON EVIDENCE § 41, p. 181 (6th ed.2006) (explaining that, when attempting to impeach a witness by asking about prior misconduct, "a good faith basis in fact for the inquiry is always required").

We later examined the "reasonable factual basis" requirement of Rule 5–608(b), in *Pantazes.* In that case, the defen-

dant's wife had been killed and the defendant was alleged to have hired a prostitute he frequented to commit the murder. After hearing about the murder, a witness contacted police and reported that the defendant had propositioned the witness about committing the same crime. At trial, defense counsel attempted to impeach the witness's testimony by questioning her about a previous incident in which she supposedly participated in a robbery that resulted in murder, and later falsely identified an innocent man as the killer. 376 Md. at 667–69, 831 A.2d at 435–37.

During a hearing outside the presence of the jury, counsel for the defendant attempted to establish a "reasonable factual basis" for asking about the alleged prior incident by presenting two affidavits, one from a police officer who investigated the prior incident and one from defense counsel's private investigator. The police officer's affidavit stated that the witness identified one man as the killer and that man was charged with murder, but the charges were later dismissed after the police arrested a different suspect. The private investigator's affidavit stated the same. Neither affidavit said that the witness knowingly misidentified the killer or that she in any way participated in the robbery. *Id.* at 669–72, 831 A.2d at 437–38.

The trial court refused to allow the incident to be raised on cross-examination and the defendant later argued on appeal that the trial court abused its discretion in making that ruling. *Id.* at 672, 831 A.2d at 438. We affirmed the trial court's ruling that a "reasonable factual basis" had not been established to show that the witness's prior conduct actually occurred. Specifically, the affidavits did "not establish that [the witness] was involved in the botched robbery or that [the witness] lied about an identification." *Id.* at 690, 831 A.2d at 449. In other words, defense counsel's "proffer of evidence amounted to little more than mere accusations...." *Id.* at 691, 831 A.2d at 449. The *Pantazes* Court then quoted *Cox*, which instructs "that when impeachment is the aim, the relevant inquiry is not whether the witness has been accused of misconduct by some other person, but whether the witness actually

committed the prior bad act. A hearsay accusation of guilt has little logical relevance to the witness' credibility." *Pantazes,* 376 Md. at 691, 831 A.2d at 449 (quoting *Cox,* 298 Md. at 181, 468 A.2d at 323).

The State asserts that "the only support for the accusation that Williams was a thief was a record showing that she had once been accused of theft." We disagree. Unlike the affidavits in *Pantazes,* which merely established that the witness in that case was claimed to have been involved in prior criminal conduct, the State's undisputed proffer established that Ms. Williams pleaded guilty to the crime of motor vehicle theft, thereby formally "admitting" in open court to having committed that offense. We are satisfied that the State's proffer of Ms. Williams's formal admission of guilt provided for Petitioner the "reasonable factual basis" required by Rule 5–608(b).

We hold, therefore, that the trial court erred in refusing to allow Petitioner to impeach Ms. Williams's testimony at trial by questioning her about the conduct underlying the conviction, albeit the conviction itself was obtained in violation of the Sixth Amendment right to counsel. Petitioner is entitled to a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL CONSISTENT WITH THIS OPINION; RESPONDENT TO PAY THE COSTS.**

ELDRIDGE, J., joins the judgment only.